145 So.2d 871 (1962)
Arnold L. LUND and Phyllis C. Lund, His Wife, Appellants,
v.
Jess MATHAS, County Clerk of Volusia County, and Tom Adams, Secretary of the State of Florida, Appellees.
No. 31737.
Supreme Court of Florida.
October 24, 1962.
*872 Anthony J. Grezik, Daytona Beach, for appellants.
Richard W. Ervin, Atty. Gen., and Joseph C. Jacobs, Asst. Atty. Gen., for appellees.
CALDWELL, Justice.
This is an appeal from the order of the Circuit Court, Volusia County, dismissing with prejudice the complaint of appellants, Arnold L. Lund and Phyllis C. Lund, his wife, brought on their own behalf and on behalf of others similarly situated, against Jess Mathas, Circuit Court Clerk of Volusia County, and Tom Adams, Secretary of State, to have the Florida Statute, Section 8.01, F.S.A., the Congressional Reapportionment Act, declared unconstitutional and to perpetually enjoin the defendants from expending State and County funds in pursuance of said Act.
The complaint alleges that the appellants and others similarly situated have suffered a debasement of their votes by virtue of the unreasonable and arbitrary redistricting provided by the Congressional Reapportionment Act. It is alleged that the Act denies them due process and equal protection of laws, violates Sections 3 and 4, Article VII, Constitution of Florida, F.S.A.,[1] and is contrary to Section 2, Amendment XIV, Constitution of the United States.[2]
*873 The motion of the defendant Clerk of the Circuit Court that the complaint be dismissed as to him on the ground that he was merely an administrative officer was granted. The motion of the defendant Secretary of State for dismissal on the ground of venue was denied. The Court in a logical opinion held that the Act met the requirements of both Federal and State Constitutions and dismissed the complaint with prejudice.
Under the 1960 decennial census of the United States, Florida became entitled to twelve Representatives in Congress, four more than the number previously allotted. In 1961 the Florida Legislature enacted the Congressional Reapportionment Act[3] dividing the State in twelve Congressional districts and specifying the counties of which such districts were composed. The districts so established have the following number of inhabitants based on the 1960 census of the United States:

 District 1 ______________ 379,288
 District 2 ______________ 455,411
 District 3 ______________ 500,000
 District 4 ______________ 482,968
 District 5 ______________ 377,421
 District 6 ______________ 660,345
 District 7 ______________ 404,611
 District 8 ______________ 241,250
 District 9 ______________ 237,235
 District 10 ______________ 397,788
 District 11 ______________ 439,578
 District 12 ______________ 374,665

The decennial census of 1960 established the population of the State of Florida as 4,951,560 persons. The Fifth District, the residence of the appellants, which is alleged to have been discriminated against, is shown as having a population of 377,421 persons, substantially less than one-twelfth of the State population. Eight of the twelve new districts are shown to have populations exceeding that of the Fifth and three to have lesser populations. It appears that three of the districts enjoy a voter ratio advantage over the Fifth District in which the appellants reside and that the Fifth District enjoys a voter advantage over the inhabitants of eight districts, if it be assumed that the single yardstick of numbers is controlling. But, even upon such inexact assumption, in the light of the figures quoted above, it does not appear that the appellants have suffered any discrimination.
Neither the Federal nor State Constitutions, nor the Federal nor State statutes, require that the Florida Legislature apportion Congressional Districts upon the basis of numerical equality. The provisions of the Florida Constitution,[4] cited by the appellants, relate solely to the apportionment of the State Senate and State House of Representatives. It is true that the United States Code, Title II, Section 3, formerly required that Congressional Districts be "composed of a contiguous and compact territory, and containing as nearly as practicable an equal number of inhabitants",[5] but that provision was not carried forward in the Congressional Reapportionment Act of 1929[6] and, in Wood v. Broom,[7] the United States Supreme Court has held that the requirements of compactness, contiguity and equal number of inhabitants were no longer in effect.
Population is one of several important factors in apportionment. The varying interests of an area, including economic elements of topography, geography, means of transportation and industrial, agricultural and resort activities, together with numerous other regional characteristics, are to be considered. Neither the Congress nor the Courts are qualified by intimate knowledge of any given area to mark out reasonable boundaries calculated *874 to best serve the public welfare. The Federal Constitution and statutes providently thrust that responsibility upon State Legislatures.
It is noted with some interest that in Sobel v. Adams,[8] the most recent decision having to do with reapportionment (in that case, State Legislative reapportionment), the three Judge District Court held, in the light of Baker v. Carr,[9] "that the rationality of a legislative reapportionment may include a number of factors in addition to population."
The statute under attack comes to this Court with a presumption of validity. This Court must presume, in the absence of a showing to the contrary  and none was made here  that the Legislature considered the pertinent facts in reaching its conclusion and in approving the Act.
No useful purpose can be served by a detailed discussion of the long and uniform line of decisions, with which we are in harmony, nor by any labored attempt to rationalize the radical departure from stare decisis and the innovation implicit in the recent decision of Baker v. Carr, supra. The Baker case assaulted the theretofore impenetrable "political thicket" of State, not Congressional, apportionment but, in our opinion, left in effect, among others, the bedrock case of Colegrove v. Green,[10] in which the Supreme Court dismissed a bill to enjoin the election of Members of Congress under the allegedly invalid provisions of Illinois law governing Congressional Districts.
In Wesberry v. Vandiver,[11] a case brought to test the validity of a Georgia statute which reapportioned Congressional Districts, a three Judge District Court in its decision filed June, 1962, noted that the Court in Baker v. Carr, supra, was at pains to distinguish Colegrove v. Green, supra. Holding that the Colegrove case had been neither over-ruled nor sapped of its strength, the Court quoted with approval this language:[12]
"The petitioners urge with great zeal that the conditions of which they complain are grave evils and offend public morality. The Constitution of the United States gives ample power to provide against these evils. But due regard for the Constitution as a viable system precludes judicial correction. Authority for dealing with such problems resides elsewhere. Article I, section 4, of the Constitution provides that "The Times, Places and Manner of holding Elections for * * * Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at anytime by Law make or alter such Regulations * *.' The short of it is that the Constitution has conferred upon Congress exclusive authority to secure fair representation by the States in the popular House and left to that House determination whether States have fulfilled their responsibility. If Congress failed in exercising its powers, whereby standards of fairness are offended, the remedy ultimately lies with the people. Whether Congress faithfully discharges its duty or not, the subject has been committed to the exclusive control of Congress. An aspect of government from which the judiciary, in view of what is involved, has been excluded by the clear intention of the Constitution cannot be entered by the federal courts because Congress may have been in default in exacting from States obedience to its mandate."
*875 It is our conclusion that the Congressional Reapportionment Act involved here fulfills every requirement of the Federal and State Constitutions and the Federal Apportionment Act and that the order of the Circuit Judge should be affirmed.
ROBERTS, C.J., TERRELL, THOMAS, DREW and O'CONNELL, JJ., and WALKER, Circuit Judge, concur.
NOTES
[1] Fla. Const., art. VII:

"§ 3. Apportionment of representation in senate and house of representatives.  The Legislature that shall meet in regular session A.D. 1925, and those that shall meet every ten years thereafter, shall apportion the Representation in the Senate, and shall provide for thirty-eight (38) Senatorial Districts, such Districts to be as nearly equal in population as practicable, but no county shall be divided in making such apportionment, and each District shall have one Senator; and, at the same time, the Legislature shall also apportion the Representation in the House of Representatives, and shall allow three (3) Representatives to each of the five most populous counties, and two (2) Representatives to each of the next eighteen more populous counties, and one Representative to each of the remaining counties of the State at the time of such apportionment. * * *"
"§ 4. Senatorial district to be composed of contiguous counties.  Where any senatorial district is composed of two or more counties, the counties of which such district consists shall not be entirely separated by any county belonging to another district. Any new county that may be created shall be entitled to one member in the House of Representatives in excess of the limit prescribed in Section 2 of this Article until the apportionment following next thereafter, and shall be assigned when created to one of the adjoining Senatorial Districts as shall be determined by the Legislature."
[2] U.S.Const., Amend. XIV, § 2:

"Representatives shall be apportioned among the several States according to their respective numbers * * *."
[3] Fla. Stat., § 8.01 (1961), F.S.A.
[4] Fla. Const., art. XII, §§ 3 & 4.
[5] Act of August 8, 1911, ch. 5, § 3, 37 Stat. 14.
[6] The Congressional Reapportionment Act, ch. 28, § 22, 46 Stat. 26 (1929), 2 U.S.C. § 2a (1958).
[7] Wood v. Broom, 287 U.S. 1, 6-7, 53 S.Ct. 1, 77 L.Ed. 131 (1932).
[8] D.C., 208 F. Supp. 316 (1962).
[9] 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).
[10] 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1945).
[11] D.C., 206 F. Supp. 276 (1962).
[12] Id. 206 F. Supp. at 283.