James THIGPEN, Plaintiff,

v.

Victor A. MEYERS, Secretary of State of the State of Washington; and John O'Connell, Attorney General of the State of Washington, Defendants,

League of Women Voters of Washington, Intervenor.

No. 5597.

United States District Court
W. D. Washington, N. D.
Dec. 13, 1962.

M. L. Borawick, of Parker & Borawick, Midway, Wash., for plaintiff.

Philip H. Austin, Gene Godderis, Asst. Attys. Gen., of the State of Washington, Lyle L. Iversen, Sp. Asst. Atty. Gen., State of Washington, Seattle, Wash., for defendant.

Donald S. Voorhees, of Riddell, Williams, Voorhees, Ivie & Bullitt, Seattle, Wash., for intervenor.

Before JERTBERG, Circuit Judge, and LINDBERG and BEEKS, District Judges.

BEEKS, District Judge.

Population growth generates many problems. This is one of them. Spawned by the historic pronouncement in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, this class action is before us challenging the Federal constitutionality of existing legislative and congressional reapportionment in the State of Washington.[1] Plaintiff is a registered voter residing in Midway Precinct of King County, a part of the 30th Legislative District and the 7th Congressional District. Defendants are the Secretary of State and the Attorney General of the State of Washington. Intervenor is a non-profit, non-stock corporation of Washington which was permitted to intervene shortly after this proceeding was commenced.[2] On July 13, 1962, the Court denied defendants' motion to dismiss the complaint upon the ground that it failed to state a claim upon which relief could be granted. Also at that time the Court denied plaintiff's motion

1. The legislative apportionment is presently described by Revised Code of Washington, Ch. 44.06.010 through 44.06.530, inclusive, and congressional apportionment is described in Revised Code of Washington, Ch. 29.68.011, 29.68.021, 29.68.030, 29.68.040, 29.68.050, 29.68.062 and 29.68.066.

2. At the time of trial, the Auditor of King County was dismissed as a defendant, it being conceded by all parties that he was not a necessary party. Also, at that time a motion on the part of Washington State Grange, a non-profit, nonstock corporation of the State of Washington, and A. Lars Nelson to intervene as defendants was denied upon the ground that it was not timely made, the motion for intervention having been made four days prior to trial.

for an order restraining and enjoining defendants from holding any primary election or general election for the offices of the United States House of Representatives, Washington State Senate and Washington State House of Representatives. The case was then continued until November 30, 1962 for trial.

Subsequent to the general election held on November 6, 1962, several pretrial conferences were had and as a result of the industry and diligence of all counsel at that time participating in the case, a final pretrial order was formulated and signed on November 16, 1962. The pretrial order was the product of enlightened and conscientious participation of counsel in full accord with the modern view of the purpose of such proceedings.

On November 26, 1962, four days prior to trial, the Attorney General of the State of Washington, on his own behalf and on behalf of the defendant Secretary of State, substituted quarterbacks. Prior to this date, the defense had been competently handled by a regularly appointed and acting Assistant Attorney General. On November 26, a specially appointed Assistant Attorney General appeared for the defendants and requested leave to withdraw substantially all of the admitted facts and exhibits set forth in and attached to the pretrial order, although he made no showing whatsoever that they were inaccurate in any respect. This motion was heard by the author of this opinion and it was denied without prejudice to renewal thereof before the entire panel at the time of trial. At the commencement of the trial, the movant was asked by the Court whether he desired to renew his motion, at which time he announced that he was withdrawing it but that he intended to argue, as will more fully appear hereafter, that the Court in deciding this case could not consider the admitted facts and exhibits he had sought to withdraw.

The Special Assistant Attorney General did so argue, taking the position that in considering the constitutionality of a statute the Court may look only to the face of the statute and to such facts as are susceptible of judicial notice.[3] The principal thrust of his argument is that there are insufficient facts of which the Court may take judicial notice,[4] and inasmuch as the Court may not consider other evidence, it is unable to adjudicate the issues involved. The mere statement of the argument betrays its weakness. Projected to its logical conclusion, defendants say in effect:

1. Because there is no statute in Washington requiring records of population within legislative districts which the Court may judicially notice, a court may never declare a Washington apportionment statute invidious, even though the discrimination became oppressive to the point where one person's vote counted 100 times that of his political neighbor.

2. Discrimination may be perpetuated by legislative inaction. The Washington State Constitution requires the Legislature to provide for an enumeration of inhabitants of the State semi-decennially.[5] This has never been done.

3. Citing Gottstein v. Lister, 88 Wash. 462, 153 P. 595; Barker v. State Fish Commission, 88 Wash. 73, 152 P. 537; State Ex Rel. O'Connell v. Meyers, 51 Wash. 2d 454, 319 P.2d 828.

4. Federal census tracts do not in all cases correspond with legislative districts.

5. Washington State Constitution: "ARTICLE II, § 3 THE CENSUS. The legislature shall provide by law for an enumeration of the inhabitants of the state in the year one thousand eight hundred and ninety-five and every ten years thereafter; and at the first session after such enumeration, and also after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and house of representatives, according to the number of inhabitants, excluding Indians not taxed, soldiers, sailors and officers of the United States army and navy in active service." (1889)

3. Even if the Legislature had performed its constitutional duty by enacting a statute giving official status to such population studies of which the Court could take judicial notice, all that would be necessary to render the Court impotent would be for the Legislature to repeal such statute.

■ In the legal climate of today, no citizen may acquire a right to a legal status created by unremitting legislative disregard of sacred constitutional rights.

■ While it may be true that in some situations such a constitutional issue must be resolved without aid of evidence, it need simply be stated that insofar as the issues here presented are concerned, such is not the law. Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed. 2d 110; United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234; Chastleton v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

The population of the State of Washington according to the 1960 Federal census is 2,824,177 persons. The population of the seven congressional districts varies from a low of 342,540 in the 3rd Congressional District (comprising 9 counties in southwest Washington) to a high of 510,512 in the 7th Congressional District (comprising the southern portion of King County, including a portion of the City of Seattle). Thus, the value of an individual vote in the 3rd District is worth 1.5 times the vote of a person in the 7th District.

It is urged by defendants on the authority of Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432, that a claim of congressional mal-apportionment is nonjusticiable. It is our view that the holding is to the contrary, that the court had jurisdiction but elected not to exercise it on the particular facts of that case. Baker v. Carr, supra; Wesberry v. Vandiver, 206 F.Supp. 276 (D.C.Ga.).

■ The Constitution and existing laws of the United States do not require congressional apportionment on the basis of population, Wood v. Broom, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131, and unlike legislative apportionment the Constitution and laws of the State of Washington are silent upon the subject. As was said in Lund v. Mathas, Fla., 145 So.2d 871:

"Population is one of several important factors in apportionment. The varying interests of an area, including economic elements of topography, geography, means of transportation and industrial, agricultural and resort activities, together with numerous other regional characteristics, are to be considered. * · * * "

This does not mean, however, that the states are free to apportion congressional districts on a discriminatory basis. Wesberry v. Vandiver, supra, wherein Judge Tuttle said, at page 287:

" * * * The fact that Congress did not expressly prescribe that congressional districts should be reasonably equal as to population does not, of course, prevent the State from districting according to equal population, nor, it seems to me, does it excuse the State from failing to do so if a failure to do so works an unconstitutional deprivation on the plaintiffs."

■ The statutes defining congressional districts are presumed constitutional and he who contends otherwise has the burden of establishing his contention. The Supreme Court of Michigan has decreed:

" * * * When a legislative apportionment provides districts having more than double the population of others, the constitutional range of discretion is violated. This is not to say that less than such 2 to 1 ratio is constitutionally good. It is to say only that peril ends and disaster occurs when that line is cross-

ed." (Scholle v. Hare, Mich., 116 N.W.2d 350)

That case, however, dealt with the apportionment of legislative districts and definite guide lines with respect to congressional districts have not yet been formulated. Whether the Michigan rule or some other rule should be followed, we need not decide. We are satisfied that the variance now existing in the State of Washington is not so invidiously discriminatory as to amount to a denial of equal protection. Accordingly, we hold that the presumption of constitutionality has not been overcome and this action is dismissed insofar as relief predicated upon congressional mal-apportionment is concerned.

Legislative authority of the State of Washington is vested in the Legislature consisting of a Senate and House of Representatives.[6] The House of Representatives shall be composed of not less than 63 nor more than 99 members and the number of senators shall not be more than one-half nor less than one-third of the number of members of the House of Representatives.[7] The only provision in the Constitution respecting territory to be contained in a State legislative district provides that senators shall be elected by single districts of convenient and contiguous territory and that no representative district shall be divided in the formation of a senatorial district.[8] After each Federal census the Legislature shall apportion and redistrict the members of the Senate and House of Representatives on the basis of population.[9] The Washington State Legislature is presently composed of 99 representatives and 49 senators from 49 legislative districts.[10]

The Legislature of the State of Washington has not of its own volition undertaken reapportionment since 1901. In 1930, the voters of the State by initiative increased the number of State senators from 42 to 46 and the number of representatives from 97 to 99. The initiative also made representative district boundaries coincide with senatorial district boundaries and gave each legislative district a minimum of two representatives.[11] In 1956, the voters of the State by initiative successfully provided for reapportionment,[12] but in 1957 the Legislature amended the initiative to such an extent that it substantially reestablished the apportionment existing prior to the adoption of the initiative.[13]

In the general election of November 6, 1962, Initiative Measure No. 211, which sought to redistrict the State legislative districts according to population shown by the 1960 Federal census, was defeated.

The appendix is a map showing the boundaries of the legislative districts in Washington, the total population of each legislative district, the number of senators and representatives per legislative district, the population of each district per senator and representative, the percentage of population over and under the norm per representative and per senator, and the principal products and industries in each legislative district. It will be noted:

1. If each district had exactly the same population as every other legislative district, the number of persons per State Representative would be 28,527 and the number of persons per State Senator would be 57,636.

6. Washington State Constitution, Article II, Section 1, as amended by Amendment 7.

7. Washington State Constitution, Article II, Section 2.

8. Washington State Constitution, Article II, Section 6.

9. See footnote 5.

10. See footnote 1.

11. Initiative 57, Chapter 2, page 31, Laws of 1931.

12. Initiative 199, Chapter 5, page 11, Laws of 1957.

13. Chapter 289, page 1147, Laws of 1957.

2. The 34th Legislative District is the only District in the State of Washington approximating the norm. The others range from 57% below the norm to 102% above the norm as to population per State Representative and from 65% below the norm to 152% above the norm as to population per State Senator.

3. Twenty-four legislative districts containing 1,086,924 persons, or 38% of the total population of the State, have 51 of the 99 votes in the State House of Representatives, and twenty-five legislative districts containing 1,008,415 persons, or 35.6% of the total State population, have a majority in the State Senate.

The following table illustrates some of the extreme variations in vote values throughout the State. Column 3 indicates the value of an individual vote in the district set forth in Column 1 when compared with the value of an individual vote in the district set forth in Column 2.

### State House of Representatives

| Column 1 | Column 2 | Column 3 |
|---|---|---|
| 2nd | 48th | 4.65 |
| 2nd | 31st | 3.90 |
| 2nd | 30th | 3.86 |
| 35th | 48th | 3.78 |
| 2nd | 5th | 3.77 |
| 9th | 48th | 3.69 |
| 42nd | 48th | 3.32 |
| 35th | 30th | 3.14 |

### State Senate

| | | |
|---|---|---|
| 19th | 31st | 7.25 |
| 10th | 31st | 7.09 |
| 19th | 38th | 6.99 |
| 10th | 38th | 6.85 |
| 8th | 31st | 5.87 |
| 19th | 30th | 4.78 |
| 35th | 31st | 4.76 |
| 10th | 16th | 4.18 |

Under the Washington Constitution, the principle of numerical equality is the rule. This is recognized by the Supreme Court of Washington:

"The parties agree that, both by virtue of the constitution and by the basic concept of our representative form of state government, it is required that legislative districts be established according to the number of inhabitants. Likewise, it is conceded that the districts must be reasonably proportionate according to the number of inhabitants, in order to stand the test of the constitutional mandate." (State Ex Rel. O'Con-

nell v. Meyers, 51 Wash.2d 454, 458; 319 P.2d 828.)

Absolute equality is not essential to validity under the equal protection clause, but a rational basis for the legislative distinctions is necessary. Lisco v. McNichols, Colo., 208 F.Supp. 471, 476. There may be relevant countervailing factors, such as geography, economics, mass media and functional or group voting strength. But none of these factors, whether considered separately or collectively, can overcome the basic principle underlying the right of an individual to cast an effective vote. Moss v. Burkhart, Okl., 207 F.Supp. 885,

893. The test is whether a state has made an invidious discrimination. Baker v. Carr, supra.[14]

■ We are aware of the presumption of constitutionality of the statutes in question. We are likewise cognizant of the burden cast upon an assailant. The population figures before us reveal the existence of extreme and striking disparities in voting values as to both houses of the State Legislature. These are of sufficient magnitude to rebut the presumption. Such being so, the defendants have the burden to establish some rational basis for them. This, they have failed to do. The lines of inequality run the length and breadth of the State, from east to west and from north to south, between contiguous districts and between different districts in the same cities. The inevitable effect thereof has been to increase rather than decrease disparities in voting strength with the growth of population. The conclusion is inescapable that the existing apportionment of the Washington Legislature is invidiously discriminatory.

■ We are asked to decline jurisdiction because the voters of Washington at the general election on November 6, 1962, defeated an initiative measure designed to reapportion the Washington Legislature according to population revealed by the Federal census of 1960. Our answer is concise and direct. We have no way of knowing whether the measure was defeated because a majority did not desire reapportionment or whether they didn't approve of the proposed method or whether they didn't understand it (there were numerous other complicated matters on the ballot) or whether the opponents were better organized than the proponents. It makes no difference. The inalienable constitutional right of equal protection cannot be made to depend upon the will of the majority. Moss v. Burkhart, supra.

The Washington Legislature must be apportioned on a constitutional basis. Invidious discrimination gnaws at the very vitals of our democratic way of life. Reapportionment is a political act, a constitutionally created duty which every member of every legislature has taken a solemn oath to perform.

Our attitude is well expressed in Scholle v. Hare, supra:

"The Supreme Court of Michigan did not ask for submission of this issue and its now unavoidable determination. Some of the veterans of the legislature, along with their predecessors, failed regularly to execute the constitutional oath each had taken to redistrict and reapportion under original section 4 of the fifth article of the Michigan Constitution. They and they alone are responsible for justiciable presentation and consideration of the issue before this Court. Had they faithfully and decennially executed said section 4 the powers of this Court, and those of the United States Supreme Court, never could have been invoked; nor would those powers now be called to action. * * *"

■ We take notice of the fact that a new legislature will convene on January 14, 1963. Believing, as we do, that redistricting should be accomplished by the body constitutionally responsible therefor and that the sins of the fathers should not be visited upon the sons, we are deferring final action to afford it the opportunity of discharging its constitutional mandate. If it fails, we, ever conscious of our oath to uphold the Constitution of the United States, will unhesitatingly take appropriate action to correct the inequity.

Having so said, the matter is continued until April 8, 1963, for further hearing.

14. Concurring opinion of Mr. Justice Douglas.

A: 34,688
B: 17,344
C: -39.2
D: -39.8
E: FISHERIES
DAIRYING
POULTRY
TRUCK CROPS
SAN JUAN

A: 35,629
B: 35,629
C: +24.9
D: -38.2
E: DAIRYING
FOREST PRODUCTS
BERRIES
WHATCOM 41
1 SENATOR 1 REP.
COAL
FISH
OIL REFINING

42
1 SENATOR 2 REP.

E: DAIRYING
POULTRY
BERRIES
FISHERIES
VEGETABLES
SKAGIT
40
1 SENATOR
2 REPRESENTATIVES
A: 54,222
B: 27,111
C: -5.0
D: -5.9

A: 140,023
B: 46,676
C: +63.6
D: +142.9
E: POULTRY
DAIRYING
VEGETABLE SEEDS
ISLAND

A: 51,814
B: 25,907
C: -9.2
D: -10.1
E: FOREST
PRODUCTS
DAIRYING
SNOHOMISH 39
1 SENATOR
2 REP.
FISH
VEGETABLES
BERRIES

A: 55,912
B: 18,637
C: -34.7
D: -3.0
E: FOREST PRODUCTS
DAIRYING
FISHERIES
MINERALS
POULTRY
CLALLAM

A: 40,744
B: 20,372
C: -286
D: -29.3
CHELAN
12
1 SENATOR
2 REPRESENTATIVES
E: APPLES
SOFT FRUIT
COPPER
FOREST
PRODUCTS

JEFFERSON 24
1 SENATOR
3 REPRESENTATIVES
38 1 SEN
3 REP.

KING 47
A: 71,084
B: 35,542
C: +24.6
D: +23.3
E: FARMING, FOREST
PRODUCTS, MANUFACT.
1 SENATOR
2 REP.

A: 84,176
B: 28,069
C: -1.6
D: +46.0
E: POULTRY
DAIRYING
NAVY
YARD
KITSAP
23
1 SENATOR
3 REP.

30
(KING CO.)
A: 95,613
B: 47,836
C: +67.7
P: +66.0
E: MANUFACT.
FOREST PRODUCTS
FISH
COAL
FARMING
1 SENATOR
2 REP.

GRAYS HARBOR 21
A: 49,116
B: 24,558
C: -13.9
D: -14.8
E: FOREST
PRODUCTS
FISHERIES
DAIRYING
CRANBERRIES
1 SENATOR
2 REP.
MASON

A: 66,944
B: 33,472
C: +17.3
D: +16.1
KITTITAS
E: COAL
POTATOES
LIVESTOCK
FOREST PRODUCTS
WHEAT
FRUITS

A: 55,049
B: 27,624
C: -9.5
D: -4.5
22
1 SENATOR 2 REP.
THURSTON
E: FOREST PRODUCTS
OYSTERS, DAIRYING, POULTRY

A: 59,510
B: 29,755
C: +7.3
D: +3.3
PIERCE 25
1 SENATOR
2 REP.
E: FOREST
PRODUCTS
SMELTING
MANUFACTURING
DAIRYING
BERRIES
NATL. PARK

A: 74,299
B: 24,766
C: 13.2
D: 28.9
E: APPLES
PEARS
PEACHES
CHERRIES
APPRICOTS
GRAPES
TRUCK + FIELD
CROPS
14
1 SENATOR
3 REPRESENTATIVES

A: 20,023
B: 20,023
C: -29.8
D: -65.3
E: FOREST
PRODUCTS
FISHERIES
DAIRYING
CRANBERRIES
19
1 SENATOR
1 REPRESENTATIVE
PACIFIC

A: 41,858
B: 20,929
C: -26.6
D: -27.4
20
1 SENATOR
2 REPRESENTATIVES
LEWIS
E: DAIRYING
POULTRY
HAY
MINERALS
COAL
FOREST PRODUCTS

YAKIMA
15
1 SENATOR
2 REPRESENTATIVES

WAHKIAKUM

A: 61,227
B: 30,613
C: +7.3
D: +6.2
E: FOREST PRODUCTS
ALUMINUM
DAIRYING
MINT
SALMON
COWLITZ
18
1 SENATOR
2 REP.

SKAMANIA

KLICKITAT
A: 43,896
B: 43,896
C: +53.9
D: -23.8

A: 68,575
B: 22,858
C: -19.9
D: +19.0
E: FOREST PRODUCTS
DAIRYING
POULTRY
ALUMINUM
FRUITS
CLARK
49
1 SEN
3 REP.

17
1 SENATOR
1 REPRESENTATIVE

## LEGEND

A: Total Population and Population Per Senator
B: Population Per Representative
C: Percentage Population Over (+) or under (—) Norm per Representative
D: Percentage Population Over (+) or Under (—) Norm Per Senator
E: Principal Products and Industries
Note: The Districts within the Cities of Tacoma, Spokane and Seattle are not detailed on the Map. Using the Legend these Districts Include:

3rd A: 45,397
B: 22,698
C: −20.4
D: −21.2
E: Urban Spokane

5th A: 93,475
B: 46,737
C: +63.8
D: +62.2
E: Urban Spokane

27th A: 45,272
B: 22,636
C: −20.7
D: −21.5
E: Urban Tacoma

28th A: 64,715
B: 32,357
C: +13.4
D: +12.3
E: Urban Tacoma

26th A: 50,065
B: 25,032
C: −12.3
D: −13.1
E: Urban Tacoma

* NORM is the result reached upon dividing the total population of the state by the total number of state Senators and Representatives respectively.

# LEGISLATIVE DISTRICTS

| 33rd | A: 52,798 | 32nd | A: 45,121 | 43rd | A: 40,752 | 46th | A: 67,338 | 7th | A: 33,362 |
|------|-----------|------|-----------|------|-----------|------|-----------|-----|-----------|
| | B: 26,399 | | B: 22,560 | | B: 20,376 | | B: 33,669 | | B: 16,681 |
| | C: −7.5 | | C: −20.9 | | C: −28.6 | | C: +18.0 | | C: −41.5 |
| | D: −8.4 | | D: −21.7 | | D: −29.3 | | D: +16.8 | | D: −42.1 |
| | E: Urban Seattle | | E: Urban Seattle | | E: Urban Seattle | | E: Urban Seattle | | E: Urban Spokane |
| 35th | A: 30,470 | 34th | A: 57,059 | 44th | A: 58,998 | 48th | A: 115,297 | 29th | A: 72,991 |
| | B: 15,235 | | B: 28,539 | | B: 29,495 | | B: 57,648 | | B: 36,495 |
| | C: −46.6 | | C: 0 | | C: +3.4 | | C: +102.1 | | C: +27.8 |
| | D: −47.1 | | D: −1.0 | | D: +2.3 | | D: +100.0 | | D: +26.6 |
| | E: Urban Seattle | | E: Urban Seattle | | E: Urban Seattle | | E: Urban Seattle | | E: Urban Tacoma |
| 37th | A: 38,800 | 36th | A: 46,164 | 45th | A: 70,288 | 6th | A: 37,837 | 31st | A: 145,180 |
| | B: 19,400 | | B: 23,082 | | B: 35,144 | | B: 18,918 | | B: 48,393 |
| | C: −32.00 | | C: −19.1 | | C: +23.2 | | C: −33.7 | | C: +69.6 |
| | D: −32.7 | | D: −19.9 | | D: +22.0 | | D: −34.4 | | D: +151.9 |
| | E: Urban Seattle | | E: Urban Seattle | | E: Urban Seattle | | E: Urban Spokane | | E: Urban Seattle |