James THIGPEN, Plaintiff,

v.

Victor A. MEYERS, Secretary of State of the State of Washington, and John O'Connell, Attorney General of the State of Washington, Defendants,

League of Women Voters of Washington, Intervenor.

No. 5597.

United States District Court
W. D. Washington, N. D.

July 23, 1964.

M. L. Borawick, of Parker & Borawick, Midway, Wash., for plaintiff.

John J. O'Connell, Atty. Gen. of Washington, and Philip H. Austin, Asst. Atty. Gen., of Washington, Olympia, Wash., for defendants.

Donald S. Voorhees, of Riddell, Williams, Voorhees, Ivie & Bullitt, Seattle, Wash., for intervenor.

Before JERTBERG, Circuit Judge, and LINDBERG and BEEKS, District Judges.

BEEKS, District Judge.

This is a narrative of frustration and failure. This case was filed on June 6, 1962. The first hearing was had on July 13, 1962. At that time it was brought to our attention that an initiative measure designed to reapportion the legislature on the basis of the 1960 Federal Census [1] would be upon the ballot at the November, 1962, general election. Upon request, the court continued the matter for trial to a date subsequent to the general election. The initiative was defeated and the matter was heard on the merits on November 30, 1962. On December 13, 1962, we filed our opinion [2] declaring the legislative districts of the State of Washington established pursuant to Chapters 5 and 289, Washington Laws of 1957,[3] invidiously discriminatory and hence unconstitutional. We took notice of the fact that a new legislature would convene on January 14, 1963,[4] and after being assured that the legislature would perform its constitutional duty and validly reapportion itself if given the opportunity to do so, we continued the matter until April 8, 1963, for the purpose of affording such opportunity. The legislature thereafter met in general session, followed by a special session, but failed to reapportion itself. On May 27, 1963, we issued a decree enjoining the holding of further elections pursuant to the statutes declared by us to be unconstitutional.[5] More than two years have now expired

---

1. Initiative Measure No. 211 sponsored by Intervenor League of Women Voters.

2. 211 F.Supp. 826.

3. R.C.W., Ch. 44.06.010 through 44.06.530.

4. At that time we said (211 F.Supp. 832): "We take notice of the fact that a new legislature will convene on January 14, 1963. Believing, as we do, that redistricting should be accomplished by the body constitutionally responsible therefor and that the sins of the fathers should not be visited upon the sons, we are deferring final action to afford it the opportunity of discharging its constitutional mandate. If it fails, we, ever conscious of our oath to uphold the Constitution of the United States, will unhesitatingly take appropriate action to correct the inequity."

5. The action taken by us was affirmed by the Supreme Court of the United States on June 22, 1964, 378 U.S. ——, 84 S.Ct. 1905, 12 L.Ed.2d 1024.

since the date of the original hearing without any accomplishment and the woes of reapportionment are still upon us. Like an echo from the past, we are again assured that the 1965 legislature will lawfully reapportion itself if we will stay the effect of our decree of May 27, 1963, and permit matters to proceed as we did in December, 1962. This we refuse to do.

What then are the alternatives? It has been suggested that we could direct that elections to both houses of the legislature be held on a state-wide or "at large" basis or that we could ourselves undertake to redistrict by judicial fiat.

Elections at large would undoubtedly satisfy the constitutional requirements of legislative representation. They would, however, be chaotic insofar as the voting public is concerned and such remedy might very well produce a result far more inimical than the evils sought to be eradicated in that a legislature elected on a state-wide basis might very well produce a less representative government than now exists.

At this late date judicial reapportionment is likewise not feasible. There is only a short time remaining until the primary election on September 15 and the lead time necessary to enable election officials to perform the many administrative functions necessary therefor substantially reduces this period. In order

for this court to intelligently and fairly reapportion the legislature and promulgate rules for the implementation thereof, it would be necessary to hold hearings and take extensive testimony to enable it to fulfill its obligation and the short period of time remaining simply renders this method impractical.

What then should be done? The simple and obvious solution would be to call a special session of the legislature forthwith for the purpose of establishing constitutional legislative districts. We are told that this cannot be done but we find such contention without merit.[6]

To the end that redistricting, a political act, may be accomplished in this State by the body primarily constitutionally charged with such responsibility, and to avoid any taint of unconstitutionality, we sanction a special session of the legislature for the sole and limited purpose of enacting redistricting legislation on a constitutional basis, together with the enactment of such legislation as may be necessary to sustain such special session and to carry the plan adopted through the elective process.

Failing redistricting by a special session of the legislature, however, a third method occurs to us, namely, that we should stay that portion of our decree of May 27, 1963, enjoining the defendant from accepting any declaration of candidacy, holding any election, either primary or general, etc.[7] for the purpose of per-

6. We need only refer to the recent experience in Colorado to establish that it can be done if there is a will to do it. On June 26, 1964, the United States District Court for the District of Colorado refused the use of an unconstitutional scheme for the holding of the 1964 elections in Colorado; whereupon a special session of the legislature was called; it enacted legislation to reapportion itself and the legislation was approved by the court as constitutional, all within a total elapsed period of 12 days.

7. The portion to be stayed reads as follows: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant Victor A. Meyers, as Secretary of State and chief election officer of the State of Washington, be and he hereby is permanently enjoined from him-

self doing, or from aiding, counseling or advising any other person to do, either directly or indirectly, any of the following specifically listed acts, or any other act or acts, in connection with the election of candidates for the offices of state senator and representative from any district as defined by the statutes hereinabove declared unconstitutional or any district as defined by any other statute or provision of the Constitution of the State of Washington which antedates such statutes:
"1. Accepting any declaration of candidacy;
"2. Accepting any filing fee;·
"3. Accepting any certificate of election from any county auditor;
"4. Accepting any official canvass from any county canvassing board;

mitting both primary and general elections in 1964 upon the basis of the legislative districts established pursuant to Chapters 5 and 289, Washington Laws of 1957, and that we weight the vote of each and every member of the legislature in the same proportion as the population represented by him bears to the population norm or that figure which would result if each legislative district had the same population as every other legislative district. Because of the lateness of the hour, we favor this method as being the only feasible alternative in the event reapportionment is not accomplished by the legislature as aforesaid.

It is said that this solution would result in chaos and confusion within the legislature in that "voice" votes on the floor or in committee would not be practical. We find this criticism to be exaggerated and of no greater dignity than an inconvenience. If we must choose between a solution inconvenient to the electorate and one inconvenient to the legislature, we choose the latter because, after all, any such inconvenience is the product of the legislature's own inertia.

We do not claim this to be the ideal solution. It has some limitations, to be sure, but it is workable even though inconvenient. The weighting of a legislator's vote is but a form of reapportionment, and hence is within the equitable powers of this court. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and such weighting gives constitutional validity to the statutes creating legislative districts which we have heretofore declared unconstitutional in that it ultimately satisfies the constitutional test of "one person—one vote" enunciated by the Supreme Court of the United States.[8]

The population, the number of representatives and the number of senators for each of the 49 legislative districts in the State of Washington are set forth in par-

agraph 7 of the Pretrial Order, which by reference we adopt and make a part hereof.

It also appears in the Pretrial Order that if each legislative district had exactly the same population as every other legislative district, then the number of persons per State representative would be 28,527 (par. 17) and the number of persons per State senator would be 57,636 (par. 18). Thus, the norm per representative is 28,527 and per senator 57,636.

The weight of the vote to which each member of the legislature (those elected during the 1964 general election and those heretofore elected to office until 1966) shall be entitled during the 1965 session of the legislature or until the further order of this court shall be determined by the following formulas:

### REPRESENTATIVES

$$\frac{\text{Population represented}}{28,527} = \text{Weight of vote}$$

In legislative districts having more than one representative, "Population represented" shall be determined by dividing the total population of the district by the number of representatives provided therefor.

### SENATORS

$$\frac{\text{Population of district}}{57,636} = \text{Weight of vote}$$

Counsel for plaintiff and intervenor, and to a lesser degree the Attorney General, in their memoranda filed July 20, 1964, following the hearing on July 16, 1964, point out a number of difficulties and objections which may be encountered not only in procedure but in enforcement of a decree weighting the votes of members of the House and Senate to be nominated and elected at the forthcoming primary and general elections. It is our view that such objections are to a large extent mechanical or procedural

"5. Certifying the election of any individual candidate;
"6. Preparing or approving any ballot;
"7. Holding any election, either primary or general."

8. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506.

and may be eliminated by the provisions of the final decree and, if necessary, a supplemental order following the general election bringing in additional parties and making them subject to the provisions of the decree. However, because of these objections and in the hope that a special session of the legislature will be convened and will have performed its constitutional duty we shall defer the entry of the decree carrying our views into effect through August 31, 1964.

This court will and hereby does retain jurisdiction of this action and if at the expiration of the aforesaid period the hoped for solution has not materialized this court will hold a hearing for the purpose of settling the terms of the final decree, and the adding of such parties as may be required to make the decree effective.