## JORDAN, SECRETARY OF STATE OF CALIFORNIA, ET AL. *v.* SILVER.

No. 935.  Decided June 1, 1965.

*Thomas C. Lynch,* Attorney General of California, *Charles E. Corker* and *Charles A. Barrett,* Assistant Attorneys General, *Sanford N. Gruskin,* Deputy Attorney General, and *Herman F. Selvin* for appellants.

*Phill Silver,* appellee, *pro se.*

PER CURIAM.

The motion of the appellant the Senate of the Legislature of California to take judicial notice of official judicial records is denied.  The motion to strike the motion to dismiss or affirm is also denied.  The motion to affirm is granted and the judgment is affirmed.

MR. JUSTICE HARLAN, whom MR. JUSTICE CLARK and MR. JUSTICE STEWART join, concurring.

The California Constitution reserves to the people of the State the initiative power to propose constitutional amendments by filing a petition with the Secretary of State.[1]  If the petition is signed by 8% of the persons who voted in the preceding gubernatorial election, the proposed amendment will be submitted to the people at the next general election, and only a bare majority vote of the people is required in order to pass the amendment.

Prior to 1926 the California Constitution, Art. IV, § 6, provided that both houses of the legislature would be apportioned on the basis of population.[2]  In 1926 an

---

[1] Calif. Const., Art. IV, § 1.

[2] "For the purpose of choosing members of the legislature, the state shall be divided into forty senatorial and eighty assembly districts, as nearly equal in population as may be, and composed of contiguous

initiative measure, known as Proposition 28, was submitted to the voters which deleted the requirement that the Senate be apportioned on a strict population basis, leaving the method of apportioning the Assembly unaffected.[3] The statements accompanying the measure, which were distributed to all voters, described the proposition as an attempt to provide a federal-type plan for California, similar to the apportionment of the United States Congress, and summarized the arguments pro and con the proposal.[4] Proposition 28 was approved by a

territory, to be called senatorial and assembly districts." Calif. Const. of 1879, Art. IV, § 6, in Calif. Laws 1925, p. xi.

[3] "For the purpose of choosing members of the legislature, the state shall be divided into forty senatorial and eighty assembly districts to be called senatorial and assembly districts. Such districts shall be composed of contiguous territory, and assembly districts shall be as nearly equal in population as may be. Each senatorial district shall choose one senator and each assembly district shall choose one member of assembly. . . . [I]n the formation of senatorial districts no county or city and county shall contain more than one senatorial district, and the counties of small population shall be grouped in districts of not to exceed three counties in any one senatorial district . . . ." Calif. Laws 1927, p. lxxxv.

Another measure, Proposition 20, was also submitted to the voters in the 1926 election, which would have preserved the apportionment of both houses on a strict population basis. This proposition was defeated by a vote of 492,923 to 319,456. Record 37.

[4] "Argument in Favor of Legislative Reapportionment Initiative Measure.

" 'FEDERAL PLAN.'

"This proposed constitutional amendment will take the place of section 6, article 4, of the constitution of California, which now provides that the state shall be divided into forty senatorial districts and eighty assembly districts 'as nearly equal in population as may be, and composed of contiguous territory.'

"The growth of city population in California, and particularly the unprecedented development of the two great urban regions of the state, will have the effect, if representation is reapportioned according to present law, of consolidating political power in the inhabitants of 3 per cent of the area of the state to the prejudice of the representa-

popular vote of 437,003 to 363,208 in the November 1926 election, and the following year the legislature adopted apportionment statutes to effectuate the constitutional

tive rights of the balance of the population who inhabit 97 per cent of the area of the state. The state legislature, foreseeing disadvantages to the general interests of the state, has repeatedly declined, since the publication of the last federal census, to reapportion representation on the basis of the existing law.

"The present amendment would alter the constitution so as to enable the legislature to find a solution to the difficulty that will protect the right of the great bulk of the state to fair representation.

"The plan is called the 'Federal Plan' because its provisions resemble those of the federal constitution with respect to representation in the United States congress. It rests upon a principle widely recognized in American government and other governments that representation in a public assembly is equitably apportioned not according to population alone but according to two factors—population and territory.

"The measure will preserve to rural California and the great agricultural producing areas which comprise it, the control of one house of the state legislature, namely: the senate. The measure makes no change in assembly districts. It does not increase the members of the legislature. It can not, in any way, add to state expense.

"Under this plan no county or city and county has more than one senator. The small counties are grouped, but are given at least one senator to each three counties. There are fifty-eight counties in the state and forty senators. To illustrate the working of the plan, twenty-seven of these counties might, by reason of superior population, each elect one senator; sixteen counties grouped in twos might elect eight; and fifteen counties grouped in threes might elect five. Every large homogeneous geographical area of the state is assured one representative in the senate.

"Twenty-nine states of the Union have based their legislative representation in some form upon this principle, and these states include, among others, New York, Pennsylvania, Massachusetts, Iowa, and Ohio. The principle was submitted to a popular election in Ohio in 1903, and was overwhelmingly adopted by 731,000 votes for it and only 26,479 votes against the principle. This amendment is sponsored by the California Farm Bureau Federation, the State Grange, the Farmers Union, and the Agricultural Legislative Committee. But it is also supported by chambers of commerce, women's clubs, and civic organizations generally throughout the state. It will

amendment.   This legislation was submitted to the people as required by state law, and was approved by them in the 1928 election.[5]   The amendment provided that the

create a well-balanced legislature in which neither the cities nor the countryside may predominate.   It is a just and wholesome provision.   It will give the state a better legislature than is possible under present law, and will be a fair determination of a controversy disturbing to the best interests of California.

"Vote YES on this amendment.

"DAVID P. BARROWS.

"Argument Against Legislative Reapportionment Initiative Measure.

"The proposed amendment is unfair and impractical so far as it relates to senatorial districts.

"The provision that no county or city and county shall contain more than one senatorial district would limit Alameda, Los Angeles and San Francisco to one senator each.   These three combined have 200,000 more than half of the population of the state, so the result would be that the majority would have only three senators, and the minority would be represented by thirty-seven senators.   There is no good reason for the discrimination.

"The agricultural and commercial interests are so closely allied and interwoven that neither one as such should have the greater power in legislation.   The only fair way is to base the representation on population, in accordance with the fundamental principles of our government that the majority shall rule.

"The amendment prescribes no method of determining how the senatorial districts shall be formed.   It merely provides that counties of small population shall be grouped in districts of not more than three counties in one district.   It is left to the legislature or reapportionment commission to determine arbitrarily and without restriction how it shall be done.   Many of the counties of small population are contiguous, so it will follow that sparsely settled districts must be formed, and even the agricultural sections will not have equal representation in the senate as among themselves.

"The populous counties pay the greater share of taxes, and should have the controlling voice in the expenditure of the state's funds.

"If the citizens of these centers should vote for this amendment they would help to disfranchise themselves.

"Vote NO and preserve American principles.

"DANA R. WELLER."

Record 54.

[5] Record 37.   The vote was 692, 347 in favor, and 570,120 opposed.

Senate would be composed of 40 members, to be elected from senatorial districts; the districts would be based on population, but no county could contain more than one district, and no district could consist of more than three counties.[6]

Since the adoption of these changes, various initiative measures have been submitted to the voters on more than one occasion in an attempt to change this apportionment system for the Senate. In 1948 such a proposition was defeated by a vote of 2,250,937 to 1,069,899.[7] In 1960 such a proposition was defeated by a vote of 3,408,090 to 1,876,185.[8] And in 1962 another such proposition was defeated by a vote of 2,495,440 to 2,181,758.[9]

The Court today summarily affirms the decree of the District Court holding this senatorial apportionment, consistently approved by a majority of the people of California voting in general elections, to be invalid under the decisions of this Court in *Reynolds* v. *Sims,* 377 U. S. 533, and companion cases. Were I able to detect in any of those cases the slightest basis for optimism that the Court might consider last Term's reapportionment pronouncements to leave room for the people of a State to choose for themselves the kind of legislative structure they wish to have—at least when the democratic processes employed are as straightforward and flexible as those of California—I would vote to "Note" and hear this case. Finding, however, that the judgment of the District Court is

---

[6] Calif. Const., Art. IV, § 6. The present effect of this apportionment is that Los Angeles County, with a population of over 6,000,000, has one Senator, and the three smallest counties, which together have a population of 14,294, also have one Senator. There is no claim made, however, that the Assembly is not apportioned solely on the basis of population.

[7] Proposition 13 on the 1948 ballot. Record 37–38.

[8] Proposition 15 on the 1960 ballot. Record 38.

[9] Proposition 23 on the 1962 ballot. Record 78.

squarely required by *Lucas* v. *Forty-fourth General Assembly*, 377 U. S. 713,[10] I reluctantly acquiesce in the Court's summary affirmance.[11]

---

[10] The gleam of a distinction between that case and this, which is suggested by what the Court said at p. 731 of its *Lucas* opinion, is wholly dissipated by what appears shortly thereafter at pp. 736–737.

[11] This affirmance does not of course touch the propriety of any relief that the District Court may later grant, or the extent to which provisions of the California Constitution are still binding on the State Legislature in drafting apportionment legislation, see *Forty-fourth General Assembly* v. *Lucas,* 379 U. S. 693.