[Sac. No. 7679. In Bank. Sept. 1, 1965.]

PHILL SILVER et al., Petitioners, v. EDMUND G. BROWN, as Governor, etc., et al., Respondents; THE SENATE OF THE STATE OF CALIFORNIA et al., Interveners.

[Sac. No. 7681. In Bank. Sept. 1, 1965.]

PHILIP ADAMS et al., Petitioners, v. EDMUND G. BROWN, as Governor, etc., et al., Respondents; THE ASSEMBLY OF THE STATE OF CALIFORNIA et al., Interveners.

(Consolidated Cases.)

Phill Silver, in pro. per., for Petitioners in Sac. No. 7679.

Philip Adams, Edward Napier Thomson and Roland Adickes, in pro. per., for Petitioners in Sac. No. 7681.

Thomas C. Lynch, Attorney General, Charles A. Barrett, Assistant Attorney General, and Sanford N. Gruskin, Deputy Attorney General, for Respondents in Sac. No. 7679.

Thomas C. Lynch, Attorney General, Charles A. Barrett, Assistant Attorney General, Sanford N. Gruskin, Deputy Attorney General, and Herman F. Selvin for Respondents in Sac. No. 7681.

Musick, Peeler & Garrett, Gerald G. Kelly, Richard T. Apel, William J. Emanuel, Bruce A. Bevan, Jr., Herman F. Selvin, Adrian Kuyper, County Counsel (Orange), Seymour S. Pizer, Assistant County Counsel, Woodruff J. Deem, District Attorney (Ventura), Paul L. McKaskle, Deputy District Attorney, Dannemeyer, Gustaveson & Tuohey and Conrad G. Tuohey for Interveners in Sac. No. 7679.

Phill Silver, in pro. per., Musick, Peeler & Garrett, Gerald G. Kelly, Richard T. Apel, William J. Emanuel, Adrian Kuyper, County Counsel (Orange), Seymour S. Pizer, Assistant County Counsel, Woodruff J. Deem, District Attorney (Ventura), Paul L. McKaskle, Deputy District Attorney, Dannemeyer, Gustaveson & Tuohey and Conrad G. Tuohey for Interveners in Sac. No. 7681.

Edward Napier Thomson, in pro. per., Gerald N. Hill and Gabriel Solomon as Amici Curiae in Sac. No. 7681.

TRAYNOR, C. J.—In these proceedings petitioners as citizens, taxpayers, and voters seek writs of mandate to enforce their rights and the rights of all others similarly situated to equal protection of the laws (U.S. Const., Amend. XIV) in the election of senators and assemblymen to the Legislature of California. In the Senate case (*Adams* v. *Brown*), the respondents are the Governor and the Secretary of State in

their capacity as officers charged with election duties, the members of the Reapportionment Commission, and the members of the Senate. One of the petitioners in the Assembly case, the Assembly, and some of its members acting in behalf of all its members are interveners in the Senate case. In the Assembly case (*Silver* v. *Brown*) the respondents are the Governor, the Secretary of State, the Attorney General, and all the members of the Assembly. The Assembly, the Senate, and all the senators are interveners in the Assembly case. Other interested parties have intervened in both cases.

In 1961 the Legislature reapportioned the Senate and Assembly (Elec. Code, §§ 30100, 30200, 30201) pursuant to section 6 of article IV of the California Constitution. That section was amended by an initiative measure in 1926 to adopt the so-called federal plan whereby the Senate is apportioned on a geographical basis and the Assembly on a modified population basis. The 1926 initiative measure also created the Reapportionment Commission to act if the Legislature failed to do so.[1] After the United States Supreme Court held in

---

[1] Article IV, section 6, provides ''For the purpose of choosing Members of the Legislature, the State shall be divided into 40 senatorial and 80 assembly Districts to be called senatorial and assembly districts. Such districts shall be composed of contiguous territory, and assembly districts shall be as nearly equal in population as may be. Each senatorial district shall choose one Senator and each assembly district shall choose one Member of Assembly. The senatorial districts shall be numbered from 1 to 40, inclusive, in numerical order, and the assembly districts shall be numbered from 1 to 80 in the same order, commencing at the northern boundary of the State and ending at the southern boundary thereof. In the formation of assembly districts no county, or city and county, shall be divided, unless it contains sufficient population within itself to form two or more districts, and in the formation of senatorial districts no county, or city and county, shall be divided, nor shall a part of any county, or of any city and county, be united with any other county, or city and county, in forming any assembly or senatorial district. The census taken under the direction of the Congress of the United States in the year 1920, and every 10 years thereafter, shall be the basis of fixing and adjusting the legislative districts; and the Legislature shall, at its first regular session following the adoption of this section and thereafter at the first regular session following each decennial federal census, adjust such districts, and reapportion the representation so as to preserve the assembly districts as nearly equal in population as may be; but in the formation of senatorial districts no county or city and county shall contain more than one senatorial district, and the counties of small population shall be grouped in districts of not to exceed three counties in any one senatorial district; provided, however, that should the Legislature at the first regular session following the adoption of this section or at the first regular session following any decennial federal census fail to reapportion the assembly and senatorial districts, a Reapportionment Commission, which is hereby created, consisting of the Lieutenant Governor, who shall be chairman, and the Attorney General, State Controller, Secretary of State and State Superintendent of Public Instruction, shall forthwith apportion such districts

*Baker* v. *Carr* (1962) 369 U.S. 186 [82 S.Ct. 691, 7 L.Ed.2d 663], that the apportionment of state legislatures is subject to judicial challenge on equal protection grounds, an action was brought in this court to compel the Reapportionment Commission to reapportion the state Senate. (*Yorty* v. *Anderson* (1963) 60 Cal.2d 312 [33 Cal.Rptr. 97, 384 P.2d 417].) The petitioners in the *Yorty* case contended that the provisions of section 6 governing the apportionment of the Senate denied equal protection to the voters of the more populous counties but that the provisions of that section establishing the Reapportionment Commission were severable from its invalid parts. They asserted that the 1961 reapportionment was invalid and should be considered as a failure to reapportion within the meaning of section 6. Accordingly, they concluded that it was the duty of the Reapportionment Commission to reapportion the Senate. We held, however, that even if the Senate apportionment provisions of section 6 and the 1961 reapportionment were invalid, and even if the provisions of section 6 creating the Reapportionment Commission were severable, the Legislature should have the first opportunity to reapportion the Senate if its present apportionment were held invalid. We therefore denied the petition for a writ of mandate against the Reapportionment Commission. We pointed out, however, that the petitioners were not without a remedy; that the validity of the apportionment of the Senate could be challenged in an action for mandamus or declaratory relief against the Secretary of State as the chief officer having statewide functions with respect to the election of state senators. We noted also that such an action was then pending in the federal District Court for the Southern District of California. (*Silver* v. *Jordan*, 241 F.Supp. 576.)

---

in accordance with the provisions of this section and such apportionment of said districts shall be immediately effective the same as if the act of said Reapportionment Commission were an act of the Legislature, subject, however, to the same provisions of referendum as apply to the acts of the Legislature.

"Each subsequent reapportionment shall carry out these provisions and shall be based upon the last preceding federal census. But in making such adjustments no persons who are not eligible to become citizens of the United States, under the naturalization laws, shall be counted as forming a part of the population of any district. Until such districting as herein provided for shall be made, Senators and Assemblymen shall be elected by the districts according to the apportionment now provided for by law."

The only change made in this section after 1926 occurred in 1942, when the State Controller was substituted for the Surveyor General as a member of the Reapportionment Commission.

Thereafter in June 1964, the United States Supreme Court held in a series of apportionment cases that each house of a bicameral state legislature must be apportioned on a population basis and that it is immaterial whether or not the electorate have the political remedy of the initiative and whether or not they have in fact adopted a malapportioned legislature by majority vote. (*Reynolds* v. *Sims*, 377 U.S. 533 [84 S.Ct. 1362, 12 L.Ed.2d 506]; *WMCA, Inc.* v. *Lomenzo*, 377 U.S. 633 [84 S.Ct. 1418, 12 L.Ed.2d 568]; *Maryland Committee* v. *Tawes*, 377 U.S. 656 [84 S.Ct. 1442, 12 L.Ed.2d 595]; *Davis* v. *Mann*, 377 U.S. 678 [84 S.Ct. 1453, 12 L.Ed.2d 609]; *Roman* v. *Sincock*, 377 U.S. 695 [84 S.Ct. 1462, 12 L.Ed.2d 620]; *Lucas* v. *Colorado Gen. Assembly*, 377 U.S. 713 [84 S.Ct. 1472, 12 L.Ed.2d 632].) In reliance on these decisions the United States District Court held that the apportionment of the California Senate is unconstitutional but that the Legislature should have an opportunity constitutionally to reapportion the Senate. It deferred further action until after July 1, 1965. (*Silver* v. *Jordan, supra*, (Dec. 3, 1964) 241 F.Supp. 576.) The United States Supreme Court affirmed the District Court's judgment on June 1, 1965. (*Jordan* v. *Silver*, 381 U.S. 415 [85 S.Ct. 1572, 14 L.Ed.2d 689].)

At the 1965 session of the Legislature, the Senate and the Assembly were unable to agree on a measure to reapportion the Senate, and the Legislature adjourned without meeting the federal court's July 1 deadline.

Since the validity of any apportionment of the Senate involves questions of both state and federal constitutional law and since the United States Supreme Court has stated its preference that appropriate state agencies including state courts be given adequate opportunity to adopt their own reapportionment plans before the federal courts act (*Scott* v. *Germano* (1965) 381 U.S. 407, 409 [85 S.Ct. 1525, 1527, 14 L.Ed.2d 477, 478] and cases cited), we took jurisdiction in the Senate case despite the pendency of the federal action. Since it also appeared that there were serious questions as to the validity of the apportionment of the Assembly, we also took jurisdiction of the Assembly case.

The invalidity of the Senate's present apportionment is of course now settled by *Jordan* v. *Silver, supra*, 381 U.S. 415 [85 S.Ct. 1572, 14 L.Ed.2d 689]. ■ Moreover, although the departures from population-based representation in the Assembly are not as extreme as those in the Senate, they are nevertheless large enough to deny equal protection

under the decisions of the United States Supreme Court. The population of the largest assembly district at the time of the 1960 census was 306,191, and of the smallest, 72,105, giving a ratio of 4.25 to 1.[2] On the basis solely of population an ideal district would contain one-eightieth of the total population of 15,693,338 or 196,167 persons. The largest district was 56.1 per cent larger than the ideal district, and the smallest was 63.2 per cent smaller. Voters living in districts having a minority of 44.83 per cent of the population could elect a majority of the Assembly. Of the 80 assembly districts, 24 departed from the ideal by more than 15 per cent. The City and County of San Francisco with an ideal entitlement of 3.77 assemblymen received 5, whereas Orange County with an entitlement of 3.59 received 3. San Bernardino County with an entitlement of 2.54 received 2, whereas Sacramento with an entitlement of 2.56 received 3. Riverside County with an entitlement of 1.56 received 1, whereas Kern County with an entitlement of 1.49 received 2. Although many of the more serious deviations from equal representation resulted from the requirement of section 6 of article IV that a part of a county not be joined with another county or part thereof, there appears to be no explanation for giving the City and County of San Francisco five instead of four assemblymen.

The United States Supreme Court has recognized that the policies underlying requirements of compactness and contiguity and the maintenance of the integrity of political subdivisions may justify some deviations from equally populous districts. *Reynolds* v. *Sims,* 377 U.S. 533, 578-581 [84 S.Ct. 1362, 12 L.Ed.2d 506]; *Roman* v. *Sincock,* 377 U.S. 695, 710 [84 S.Ct. 1462, 12 L.Ed.2d 620].) It has also recognized that minor discrepancies in one house may be offset by compensating discrepancies in the other and that therefore the validity of the apportionment of each house must be determined in the light of that of the other. (*Reynolds* v. *Sims,* 377 U.S. 533, 577 [84 S.Ct. 1362, 12 L.Ed.2d 506]; *Maryland Committee* v. *Tawes,* 377 U.S. 656, 673 [84 S.Ct. 1442, 12 L.Ed.2d 595]; *Lucas* v. *Colorado Gen. Assembly,* 377 U.S. 713, 735, fn. 27 [84 S.Ct. 1472, 12 L.Ed.2d 632].) We are convinced, however, that under the decisions of the United States Supreme Court, the policies underlying the requirements of

[2]The figures used throughout this opinion are estimates of the 1960 census results that were used by the Legislature in making the 1961 apportionment. Any deviations from the final census figures, however, do not appear to be constitutionally significant.

compactness and contiguity and the maintenance of the integrity of political subdivisions cannot justify such extensive departures from population-based representation as exist in the case of the Assembly (see *Davis* v. *Mann,* 377 U.S. 678, 688, 690 [84 S.Ct. 1453, 12 L.Ed.2d 609]; *WMCA, Inc.* v. *Lomenzo,* 377 U.S. 633, 647-648, 653 [84 S.Ct. 1418, 12 L.Ed.2d 568]; *Toombs* v. *Fortson* (D.C.N.D.Ga.) 241 F.Supp. 65, 69-71; *Buckley* v. *Hoff* (D.C.Vt.) 234 F.Supp. 191, 197-198; *League of Nebraska Municipalities* v. *Marsh* (D.C.Neb.) 232 F.Supp. 411, 413; *Jackman* v. *Bodine,* 44 N.J. 414 [209 A.2d 825, 827-828]) and that no feasible redistricting of the Senate could adequately compensate for such discrepancies. Accordingly, both the Senate and the Assembly must be reapportioned.

The Assembly contends, however, that it is now too late for the Legislature to be convened in special session to reapportion the Assembly in time to permit orderly conduct of the 1966 primary and general elections. It invokes section 6460 of the Elections Code, under which each county clerk is required to transmit to the Secretary of State on January 23, 1966, a statement of the number of voters in each assembly district as of January 4, 1966. It alleges that the county clerks will require approximately four months after any reapportionment measure goes into effect to determine the number of voters in the new districts, and it concludes that the county clerks must therefore know the boundaries of the new districts by about September 4, 1965, to meet the January 4, 1966, deadline. Since reapportionment of the Assembly by September 4 is now impossible, the Assembly contends that its reapportionment should be deferred until the 1967 session of the Legislature.

No reason appears, however, why inability to comply with section 6460 would interfere with the orderly conduct of the primary and general elections. Its purpose is merely to provide general electoral information. The critical date is 90 days before the June 7, 1966, primary election when the Secretary of State must transmit to each county clerk notice of the offices for which candidates are to be nominated. (Elec. Code, § 6462.) Such notice is essential to permit the orderly filing of nomination papers. Owing to the referendum provisions of article IV, section 1, any reapportionment measure would not go into effect until 90 days after the adjournment of the Legislature. If the Legislature reapportioned the Assembly in special session this fall and adjourned by Decem-

ber 9, 1965, and no referendum was effected, the measure would go into effect in time for the Secretary of State to comply with the 90-day notice requirement of section 6462. On the other hand, if the Governor should not call a special session to consider reapportionment, or if the Legislature should fail to pass a valid reapportionment measure, or if the effective date of such a measure should be postponed by referendum proceedings, this court could order the adoption of a temporary reapportionment plan for the Assembly in time for the Secretary of State to comply with section 6462. We have prepared such a plan, which we are announcing at this time. Thus, the Secretary of State will know by December 9, 1965, that either a new legislative apportionment plan or this court's temporary apportionment plan will go into effect in time for him to comply with section 6462. The 90-day referendum period will afford him adequate time to prepare the relevant data for both plans and will also afford this court adequate time to pass on the validity of any reapportionment measure the Legislature may adopt.

In *Reynolds* v. *Sims,* 377 U.S. 533, 585 [84 S.Ct. 1362, 12 L.Ed.2d 506], the court stated: ''Remedial techniques in this new and developing area of the law will probably often differ with the circumstances of the challenged apportionment and a variety of local conditions. It is enough to say now that, once a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan.'' In view of the time limits and alternatives discussed above, we believe this case is not such an unusual one as to permit the 1966 election of the Assembly to proceed under the present invalid plan.

The Legislature has already been given an opportunity to reapportion the Senate and has failed to do so. Petitioners in the Senate case therefore urge us to adopt an apportionment plan presented by them based on pairings of present assembly districts. The Senate contends, however, that if this court will set forth the standards under the California and United States Constitutions with which an apportionment measure must comply and give the Legislature an opportunity to reapportion both the Senate and the Assembly this fall, the Legislature can enact a valid apportionment measure for each house by December 9, 1965, in time for the 1966 elections. We believe that the Legislature should have that op-

portunity. As in the case of the Assembly, however, we have prepared a temporary apportionment plan for the Senate, which we also announce at this time.

■ Although the United States Supreme Court has eschewed establishing rigid mathematical standards for evaluating legislative apportionments (*Roman* v. *Sincock*, 377 U.S. 695, 710 [84 S.Ct. 1462, 12 L.Ed.2d 620] ; *Reynolds* v. *Sims*, 377 U.S. 533, 578 [84 S.Ct. 1362, 12 L.Ed.2d 506]), we deem it only fair to the Legislature to set forth limits within which an apportionment would at least carry a strong presumption of validity under the equal protection clause and beyond which it would be seriously suspect. Those limits are that no district depart from the ideal size by more than 15 per cent and that a majority of the members of each house be elected by the voters of districts containing at least 48 per cent of the total population. The former figure is that adopted by H.R. 5505 to govern congressional apportionment, which has been passed by the House of Representatives and is now pending in the United States Senate. (See also *Toombs* v. *Fortson* (1965) 241 F.Supp. 65, 69-70.) Adherence to the latter figure will insure making districts of maximum deviation the exception rather than the rule. ■ Reapportionment must be based on the 1960 census, for that requirement of section 6 of article IV is valid. (*Reynolds* v. *Sims*, 377 U.S. 533, 583-584 [84 S.Ct. 1362, 12 L.Ed.2d 506].)

■■ The question remains to what extent other provisions of the California Constitution governing apportionment can be reconciled with equal protection requirements. In addition to the clearly invalid part of section 6 providing that no county shall have more than one senate district or be included in a district with more than two other counties, sections 5 and 6 contain additional provisions that cannot all be given effect in the case of either the Assembly or the Senate.

Those sections provide for 40 senators and 80 assemblymen each of whom must be elected from a separate senate or assembly district. The districts are to be composed of contiguous territory, and in ''the formation of assembly districts no county, or city and county, shall be divided, unless it contains sufficient population within itself to form two or more districts . . . , nor shall a part of any county, or of any city and county, be united with any other county, or city and county, in forming any assembly or senatorial district.'' (Cal. Const., art. IV, § 6.)

An example will illustrate the problems presented by these limitations. Imperial County is entitled to approximately one-third of an assemblyman. It cannot be joined, however, to either of its two contiguous counties, San Diego and Riverside, without creating an area that is entitled to at least two assemblymen. There is no way to divide either of those areas into approximately equally populous districts without joining part of one county to another. On the other hand, the prohibition against so doing could be adhered to by creating a single district composed of Riverside County and Imperial County that would elect two assemblymen at large. That solution, however, would violate the provision that ''each assembly district shall choose one Member of Assembly.'' This illustration and others that could be given demonstrate that not all of the provisions of sections 5 and 6 can be given effect but that some of them can be preserved if others are sacrificed.

We find nothing in the California Constitution to indicate that any particular provision governing the makeup and apportionment of the Senate and the Assembly is to be preferred over any of the others. Due consideration should be given to all of them, but we believe that it is for the Legislature and the people in the exercise of the legislative power of the state vested in them by section 1 of article IV to determine which provision or provisions of sections 5 and 6 should be subordinated to comply with the equal protection clause of the United States Constitution. The makeup and apportionment of the Legislature involve peculiarly political questions that are not appropriate for this court to decide. They are far better entrusted to the collective political wisdom of the Legislature subject to the power of initiative and referendum reserved to the people. Our function under the decisions of the United States Supreme Court is to assure adherence to the requirements of the equal protection clause, not to resolve the purely political questions also inherent in legislative apportionment. (*Reynolds* v. *Sims*, 377 U.S. 533, 586 [84 S.Ct. 1362, 12 L.Ed.2d 506] ; *Maryland Committee* v. *Tawes*, 377 U.S. 656, 676 [84 S.Ct. 1442, 12 L.Ed.2d 595].) To preserve diversity of representation, the Legislature may deem it wise to change the number of its members. It may deem it wise in some cases to provide for the election of more than one senator or assemblyman at large from a dual or multimember district. In other cases it may deem it preferable to join part of one county to another in forming a district.

In view of the shortness of time now available, it may determine that only an interim solution should be enacted before its regular 1967 session.

 There is no merit in the contention that because the present apportionment of the Senate and Assembly is invalid, the Legislature is not empowered to act. By repeatedly encouraging invalidly apportioned state legislatures to reapportion themselves, the United States Supreme Court has clearly recognized that until a new legislature is elected, the existing legislature may validly legislate. (*Reynolds* v. *Sims,* 377 U.S. 533, 586-587 [84 S.Ct. 1362, 12 L.Ed.2d 506]; *Maryland Committee* v. *Tawes,* 377 U.S. 656, 676 [84 S.Ct. 1442, 12 L.Ed.2d 595]; *WMCA, Inc.* v. *Lomenzo,* 377 U.S. 633, 655 [84 S.Ct. 1418, 12 L.Ed.2d 568]; see *Scott* v. *Germano,* 381 U.S. 407, 409 [85 S.Ct. 1525, 1527, 14 L.Ed.2d 477, 478].)

 There is also no merit in the contention that since the Legislature has had the opportunity but has failed to reapportion the Senate, the Reapportionment Commission should now do so. Even if we could reasonably disregard the express condition precedent to the commission's power, namely, that the Legislature must have failed to reapportion itself after the 1960 census, we could not hold the provision creating the commission severable from the invalid parts of section 6. In amending section 6 in 1926 the people created the commission to enforce a specific apportionment plan. We do not believe they would have delegated such broad legislative power to the commission as is now appropriate for the Legislature to exercise, had they known that the standards set forth in section 6 could not be followed consistently with the United States Constitution. (See *Franklin Life Ins. Co.* v. *State Board of Equal., ante,* p. 222 [45 Cal.Rptr. 869, 404 P.2d 477]; *County of Los Angeles* v. *Jessup,* 11 Cal.2d 273, 279 [78 P.2d 1131].)

The temporary apportionment plans we have prepared for both the Senate and the Assembly will become effective only if the Legislature fails to enact valid plans of its own. Since they are temporary plans, senators as well as assemblymen that may be elected thereunder will serve only two-year terms. They are set forth in appendices to this opinion,* and we announce them at this time so that all interested parties will know the alternative we propose if no valid reapportionment legislation is enacted. We are particularly concerned

*See pages 283 to 290.

that the United States District Court be apprised of what this court will do in such case, so that it can discharge its responsibility to preclude elections to the Senate in 1966 under the present invalid apportionment. (See *Scott* v. *Germano,* 381 U.S. 407, 409 [85 S.Ct. 1526, 1527, 14 L.Ed.2d 477, 478].)

It is not our function to decide the peculiarly political questions involved in reapportionment, but it is our duty to insure the electorate equal protection of the laws. Accordingly, in drafting plans that meet the 15 per cent and 48 per cent limits stated above, we have adhered to existing county and assembly district boundaries and refrained from drawing any new lines dividing counties or districts. It has therefore been necessary to create several districts for both the Senate and the Assembly that will elect two or more assemblymen or senators at large. In no case, however, will more than six assemblymen or three senators be elected at large.

Writs of mandate in these cases will not issue at this time, but we retain jurisdiction to review any reapportionment legislation that may be enacted by December 9, 1965, and to order our proposed plans into effect if necessary.

McComb, J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.

The petitions of respondent governor and certain interveners for a rehearing were denied September 29, 1965.