**Flora DUNGAN, also known as Flora Oncken, and C. W. Woodbury, M. D., Plaintiffs,**

v.

**Grant SAWYER, Governor of the State of Nevada, John Koontz, Secretary of the State of Nevada, Paul Laxalt, Lieutenant Governor of the State of Nevada, Michael Mirabelli, Treasurer of the State of Nevada, and Members of and the Legislature of the State of Nevada, Defendants.**

Civ. No. 695.

United States District Court
D. Nevada.

Sept. 23, 1965.

Boyd & Leavitt, Las Vegas, Nev., for plaintiffs.

Harvey Dickerson, Atty. Gen., State of Nevada, Carson City, Nev., Vargas, Dillon, Bartlett & Dixon, Reno, Nev., Alvin N. Wartman, G. William Coulthard, Las Vegas, Nev., for defendants.

Before BARNES, Circuit Judge, and FOLEY and THOMPSON, District Judges.

PER CURIAM.

I

This class suit is brought by two citizens, as taxpayers, electors and qualified voters of the State of Nevada, seeking a declaratory judgment (28 U.S.C. §§ 2201 and 2202) to redress the alleged deprivation of rights guaranteed to them, and others in their class equally, by the Constitution of the United States (28 U.S.C. § 1343(3); 42 U.S.C. § 1988).

This suit is one of the hundreds spawned by Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and the subsequent guide lines and refinements expressed in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; W. M. C. A., Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; and Lucas v. Forty-Fourth General Assembly of State of Colo., 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (all decided June 15, 1964), and other recent decisions of the Supreme Court of the United States. Gomillion v. Lightfoot, 364 U.S.

339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); Wright v. Rockefeller, 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512 (1964); Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965); Travia v. Lomenzo, 381 U.S. 431, 85 S.Ct. 1582, 14 L.Ed.2d 480 (1965); Scott v. Germano, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965).

Nevada, California, and certain other western states of the United States, are particularly and increasingly vulnerable to this type of suit, because of the continuing vast influx of population from other portions of the country.

Such shifts in population to new areas accentuate the possibilities of charges of "the debasement" of a citizen's vote [1] by a state legislature's action, or by the alleged failure or inability of the state legislatures to act pursuant to constitutional requirements. The result is an alleged "invidious discrimination" against the complaining litigants, and others in their class, amounting to or resulting in the alleged violation of the equal protection clause of Section 1 of the Fourteenth Amendment to the United States Constitution.[2] (See Silver v. Jordan, 241 F.Supp. 576 (S.D.Calif., 1964), aff'd 381 U.S. 415, 85 S.Ct. 1572, 14 L.Ed.2d 689 (1965).

## II—Jurisdiction

■ We first hold this three-judge district court was properly convened (28 U.S.C. §§ 2201, 2202), and that it has jurisdiction, i. e., that the subject matter of the suit is justiciable, and that the action does not present a non-justiciable political question having to do with the relationship between the judiciary and its coordinate branches of the Federal Government (as it was held to be prior to Baker v. Carr, supra, 369 U.S. pp. 204–236, especially at 217, 82 S.Ct. 691).

## III—Proceedings in This Action

■ This court, on its own initiative, on May 12, 1965, issued its order joining each member of the Nevada Legislature, both Senate and Assembly, and the Legislature itself, as parties defendant in this litigation. Fed.R.Civ.P. 24(a) (2). Kozak v. Wells, 278 F.2d 104 (8th Cir. 1960); California v. United States, 180 F.2d 596 (9th Cir. 1950).

A Stipulation of Facts had been theretofore filed herein on April 9, 1965, and it was ordered that each fact therein established be deemed adopted by each newly added defendant who did not answer and deny the same, or some portion thereof. Certain individual defendants did answer and deny certain of the facts previously stipulated to, but such denials are not material to this judgment.

Briefs were filed by all parties hereto who desired to state their respective positions, and oral argument was had on June 23, 1965. At that time further evidence was received.

## IV—Remedy Sought

The remedy sought by this litigation is to have this court declare Article IV, Section 5, of the Constitution of the State of Nevada [3] unconstitutional, and,

---

1. For the purposes of this opinion, no distinction is made between "citizen's vote" or "citizen's population" or "voters" or "resident population". Cf. W.M.C.A., Inc. v. Lomenzo, supra; Holt v. Richardson, 238 F.Supp. 468 (D.Haw.1965).

2. Amendment XIV, Section 1, of the United States Constitution reads, in pertinent part, as follows:

   "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

3. Article IV, Section 5:

   "Senators and members of the assembly shall be duly qualified electors in the respective counties and districts which they represent, and the number of senators shall not be less than one-third nor more than one-half of that of the members of the assembly.

   "The senate shall consist of one senator from each county. The members of the assembly shall be apportioned on the basis of population; provided, that each county shall be entitled to at least one assemblyman. It shall be the mandatory duty of the legislature at its first session after the taking of the decennial census of the United States in the year 1950, and after each subsequent decennial census, to fix by law the number of assem-

as well, all statutory laws based thereon (particularly § 218.050 [4] to § 218.080, inclusive, of the Revised Statutes of Nevada) as invidiously discriminatory, and to issue certain restraining and other orders to insure adequate and constitutional representation to all persons.

### V—History

The Nevada Constitution was originally adopted July 28, 1864, by a Constitutional Convention made up of delegates elected from the then ten counties of Nevada.[5]

Article XVII, Section 6, of the Nevada Constitution, as it originally stood, apportioned legislators as follows: Storey County, 4 senators and 12 assemblymen; Douglas County, 1 senator and 2 assemblymen; Esmeralda County, 2 senators and 4 assemblymen; Humboldt County, 2 senators and 3 assemblymen; Lander County, 2 senators and 4 assemblymen; Lyon County, 1 senator and 3 assemblymen; Lyon and Churchill Counties, 1 senator jointly; Churchill County, 1 assemblyman; Nye County, 1 senator and 1 assemblyman; Ormsby County, 2 senators and 3 assemblymen; Washoe and Roop Counties, 2 senators and 3 assemblymen. (Stipulation of Facts, paragraph 5.)

The first paragraph of Article IV, Section 5, as originally adopted, read as Ar-

---

blymen, and apportion them among the several counties of the state, according to the number of inhabitants in them, respectively."

4. Nevada Revised Statute:
"218.050 * * * apportionment of senators and assemblymen.
"1. The senate shall consist of 17 members, and the assembly shall consist of 37 members.
"2. The apportionment of senators and assemblymen in the several counties of this state shall be as follows:
Churchill County: 1 senator and 1 assemblyman.
Clark County: 1 senator and 12 assemblymen.
Douglas County: 1 senator and 1 assemblyman.
Elko County: 1 senator and 2 assemblymen.
Esmeralda County: 1 senator and 1 assemblyman.
Eureka County: 1 senator and 1 assemblyman.
Humboldt County: 1 senator and 1 assemblyman.
Lander County: 1 senator and 1 assemblyman.
Lincoln County: 1 senator and 1 assemblyman.
Lyon County: 1 senator and 1 assemblyman.
Mineral County: 1 senator and 1 assemblyman.
Nye County: 1 senator and 1 assemblyman.
Ormsby County: 1 senator and 1 assemblyman.
Pershing County: 1 senator and 1 assemblyman.
Storey County: 1 senator and 1 assemblyman.

Washoe County: 1 senator and 9 assemblymen.
White Pine County: 1 senator and 1 assemblyman."

5. The representation by Counties at the Convention was as follows:

| | |
|---|---|
| Storey | 10 |
| Ormsby | 5 |
| Washoe and Roop | 5 |
| Lyon | 4 |
| Esmeralda | 4 |
| Humboldt | 3 |
| Lander | 3 |
| Douglas | 2 |
| Nye | 2 |
| Churchill | 1 |

The Constitution was referred to the people, and adopted the following vote:

| | For | Against |
|---|---|---|
| Storey | 5,448 | 142 |
| Ormsby | 990 | 90 |
| Washoe and Roop | 1,055 | 115 |
| Lyon | 898 | 92 |
| Esmeralda | 859 | 72 |
| Humboldt | 320 | 544 |
| Lander | (votes not counted) | |
| Douglas | 470 | 76 |
| Nye | 148 | 53 |
| Churchill | 178 | 100 |
| Totals | 10,375 | 1,284 |

Cf.: "Abstract of the Vote by Counties For and Against the Constitution of Nevada," signed by C. N. Noteware, Secretary of State, Hillyer's, Nevada Compiled Laws, 1929 ed., Vol. I, Chapter "Organic Law", p. 6. But probably Ormsby had 999 votes "for", making the total number of "for" votes 10,375; the total number erroneously stated in Hillyer. Cf.: "Nevada Constitutional Debates and Proceedings," Andrew J. Marsh, Official Reporter, p. XIV.

ticle IV, Section 5, first paragraph, presently reads (See note 3.) (Stipulation of Facts, paragraph 4; Hillyer's Nevada Compiled Laws, 1929, § 56, p. 34.)

Nevada's original Constitution vested all law making power in the Senate and Assembly (Art. IV, Sec. 1), subject only to the Federal Constitution and such restrictions as are expressly placed upon them by the State Constitution. Gibson v. Mason, 5 Nev. 283, 284, 293; State ex rel. Perry v. Arrington, 18 Nev. 412, 4 P. 735 (1884).

Nevada's original Constitution in Article I, Section 13, stated, and the Constitution today states: "Representation shall be apportioned according to population.[6]

At the general election of 1904, the people of Nevada ratified and approved the legislative enactment of Article XIX, Section 1, of the Constitution, providing for a referendum, and in 1912 ratified and approved the legislative enactment of the initiative. Art. XIX, Sec. 3.[7]

Article XV, Section 6, limited the numbers of both branches of the legislature to seventy-five, and Article XV, Section 13, provides for a state census " * * * in 1875, and every ten years thereafter," and that this census, with the federal census "shall serve as the basis of representation in both houses of the Legislature."

The 1947 legislature proposed and passed as an amendment to Section 5 of Article IV the second paragraph of the present Section 5. It was likewise agreed to and passed by the 1949 legislature, and approved and ratified by the people of Nevada, at the 1950 general election.[8]

In 1950, the people of the State of Nevada by vote of 32,150 to 9,331, amended Article IV, Section 5, of their Constitution to include the following as the second paragraph thereof:

"The senate shall consist of one senator from each county. The members of the assembly shall be apportioned on the basis of population; provided, that each county shall be entitled to at least one assemblyman. It shall be the mandatory duty of the legislature at its first session after the taking of the decennial census of the United States in the year 1950, and after each subsequent decennial census, to fix by law the number of assemblymen, and apportion them among the several counties of the state, according to the number of inhabitants in them, respectively." (Stipulation of Facts, paragraph 7.)

Both before and after 1951, the Nevada Legislature, in implementation of Section 5 of Article IV, enacted apportionment laws described as Nevada Revised Statutes 218.050 [9] to 218.080.[10]

6. Stipulation of Facts, para. 3. In 1900 the Nevada Supreme Court stated:
"The Constitution of Nevada contains no restrictive or mandatory provisions whatever as to the time when, and how often, the legislature may make the representative apportionment; and it is too well established even to require discussion that, in the absence of such restrictive or mandatory provisions, the legislature may, in its discretion, make such apportionments as often as it so wills." State ex rel. Winnie v. Stoddard, 25 Nev. 452, 456, 62 P. 237, 239, 51 L.R.A. 229 (1900).

7. Hillyer's Nevada Comp.Laws, §§ 205, 207 (1929).

8. See Statutes of Nevada, 1947, p. 881; Statutes of Nevada, 1949, p. 685.

9. See note 4, supra.

10. Nevada Revised Statute, § 218.060:
"*218.060 Clark County Assembly Districts.*
1. Clark County is divided into five assembly districts as follows:
(a) All that portion of Clark County comprising the election precincts of Nelson township and Searchlight township as established by the county clerk of Clark County shall be known as assembly district No. 1, with one assemblyman to be elected at large therein.
(b) All that portion of Clark County comprising the election precincts of Bunkerville township, of Logandale township, of Mesquite township, of Moapa township and of Overton township as established by the county clerk of Clark County shall be known as assembly dis-

(Assembly Bill No. 120, Chapter 189, approved March 27, 1947; Assembly Bill No. 93, Chapter 270, approved March 22, 1951; Assembly Bill No. 111, Chapter 88, approved March 13, 1961.)

In 1965, certain reapportionment bills were introduced in the Nevada Legislature.

We learn from the Stipulated Facts that Assembly Bill No. 1 was defeated in the Assembly by a vote of 18 to 17, and did not reach the Senate.

It appears obvious that the 1965 legislature had full opportunity during its recent session to enact a valid plan of reapportionment, but that it adjourned without doing so, and failed, neglected and refused to enact into law any plan of reapportionment.[11]

trict No. 3, with one assemblyman to be elected at large therein.

(c) All that portion of Clark County comprising the election precincts of Henderson township as established by the county clerk of Clark County shall be known as assembly district No. 4, with one assemblyman to be elected at large therein.

(d) All that portion of Clark County comprising the election precincts of North Las Vegas township as established by the county clerk of Clark County shall be known as assembly district No. 5, with one assemblyman to be elected at large therein.

(e) All the remaining portion of Clark County shall be known as assembly district No. 2, with eight assemblymen to be elected at large therein.

2. Assemblymen shall be elected at large from within the district wherein they reside by the qualified electors residing in that district."

(Section 218.070 was repealed.)

Nevada Revised Statute, § 218.080:

"*218.080 Washoe County assembly districts.*

1. Washoe County is divided into three assembly districts as follows:

(a) All that portion of Washoe County not contained in Roop assembly district and Sparks assembly district as described in paragraphs (b) and (c) of this subsection shall be known as Reno assembly district with six assemblymen to be elected at large therein.

(b) All that portion of Washoe County north of the township line common to Townships 21 and 22 North, M.D.B. & M., all that portion of Washoe County east of the range line common to Ranges 21 and 22 East, and all that portion of Washoe County west of the range line common to Ranges 18 and 19 East and north of the township line common to Townships 17 and 18 North shall be known as Roop assembly district with one assemblyman to be elected at large therein.

(c) All that portion of Washoe County contained within the limits hereinafter set forth shall be known as Sparks assembly district with two assemblymen to be elected at large therein:

Beginning at the intersection of the township line common to Townships 21 and 22 North and the range line common to Ranges 19 and 20 East; thence southerly along the range line common to Ranges 19 and 20 East to its intersection with the Truckee River; thence in an easterly direction employing the Truckee River as a boundary line to the intersection of the range line common to Ranges 21 and 22 East with the Truckee River; thence northerly along the range line common to Ranges 21 and 22 East to the intersection of the range line common to Ranges 21 and 22 East and the township line common to Townships 21 and 22 North; thence westerly along the township line common to Townships 21 and 22 North to the point of beginning.

2. Notwithstanding assembly district lines as described in this section by metes and bounds and by the natural boundary of the Truckee River, the Sparks assembly district shall include the whole of the incorporated City of Sparks at all times, and Reno assembly district shall include the whole of the City of Reno at all times.

3. Assemblymen shall be elected at large from within the district wherein they reside by the qualified electors residing in that district.

4. The county clerk of Washoe County shall, prior to all elections and as provided by law, establish the election precincts within the county in such manner that each election precinct for all elections at which any assemblymen are to be elected, or nominated for election, shall be wholly within some one of the assembly districts. The establishment of an election precinct for any such election which lies partly in two or more assembly districts shall be void."

11. Both Assembly Bills #1 and #327 proposed to reapportion both senators and assemblymen; allegedly according to population. Each specified different representation, based on different divisors or units of population selected.

## VI—*Population*

It is requisite to here emphasize (a) the explosive growth of certain counties in Nevada in recent years, and (b) various population disparities which presently exist in the apportionment of seats in both the Nevada Senate and Assembly. As an example, the Stipulated Facts show (para. 8) that Clark County between 1910 and 1950 increased in population from 3,321 to 48,289, and increased its population between 1950 and 1960 to 127,016 persons.

## VII—*Population Disparities*

Nevada's present system of apportionment under Article IV, Section 5, and its implementing legislation, finds, according to the last federal census (1960), Clark County with 127,016 persons comprising 44.52% of the state's population, represented by one senator and twelve assemblymen. Storey County, with a population of 568, has one senator and one assemblyman. This is a ratio of more than 223:1 for the Senate, and almost 19:1 for the Assembly.

Other lesser but large disparities exist. The ratio of Washoe County's representation to Esmeralda County's is over 136:1 for the Senate, and over 15:1 for the Assembly. The figures for all counties are cited in the margin.[12]

Less than 26% of the population of Nevada in the fifteen counties other than Clark and Washoe control more than 88% of the Senate. Less than 8% of the population control more than 50% of the Senate.

In the Assembly, the number of voters in Clark or Washoe Counties necessary to equal one voter in Esmeralda or Storey Counties is roughly 18 to 1. (See U. S. Census of Population, 1960, Nevada, U. S. Dept. of Commerce, Bureau of the Census, p. 23.)

## VIII—*Constitutionality*

■ Dilution of political power between thinly and heavily populated counties of a state is no longer permissible. (Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963).)

12. The representation in the state legislature by counties and the population of each county, as reported by the United States Census of Population, published by the United States Department of Commerce, Bureau of Census, for the year 1960, is as follows:

| County | 1960 Population | Percent of total Population | Number of Assemblymen | Population represented by each Assemblyman | Number of Senators | Population represented by each Senator |
|---|---|---|---|---|---|---|
| Clark | 127,016 | 44.52 | 12 | 10,585 | 1 | 127,016 |
| Washoe | 84,743 | 29.71 | 9 | 9,416 | 1 | 84,743 |
| Elko | 12,011 | 4.21 | 2 | 6,006 | 1 | 12,011 |
| White Pine | 9,808 | 3.44 | 1 | 9,808 | 1 | 9,808 |
| Churchill | 8,452 | 2.96 | 1 | 8,452 | 1 | 8,452 |
| Ormsby | 8,063 | 2.83 | 1 | 8,063 | 1 | 8,063 |
| Mineral | 6,329 | 2.22 | 1 | 6,329 | 1 | 6,329 |
| Lyon | 6,143 | 2.15 | 1 | 6,143 | 1 | 6,143 |
| Humboldt | 5,708 | 2.00 | 1 | 5,708 | 1 | 5,708 |
| Nye | 4,374 | 1.53 | 1 | 4,374 | 1 | 4,374 |
| Douglas | 3,481 | 1.22 | 1 | 3,481 | 1 | 3,481 |
| Pershing | 3,199 | 1.12 | 1 | 3,199 | 1 | 3,199 |
| Lincoln | 2,431 | .85 | 1 | 2,431 | 1 | 2,431 |
| Lander | 1,566 | .55 | 1 | 1,566 | 1 | 1,566 |
| Eureka | 767 | .27 | 1 | 767 | 1 | 767 |
| Esmeralda | 619 | .22 | 1 | 619 | 1 | 619 |
| Storey | 568 | .20 | 1 | 568 | 1 | 568 |
| Totals | 285,278 | 100.00 | 37 | | 17 | |

(Stipulation of Facts, para. 9.)

■ Where votes of citizens are "watered-down" solely because of their residence in one political subdivision rather than another, such difference in weight of vote is an invidious discrimination against the least favored voter, and unconstitutional because violative of the Equal Protection Clause, as well as the Fifteenth and Nineteenth Amendments, which require, stated in shorthand, "one man, one vote." Gray v. Sanders, supra.

■ Whether or not the state's legislative apportionment method amounts to an invidious discrimination violating the Equal Protection Clause, must be determined from a survey of the individual and personal right of voters required to be equally treated. Reynolds v. Sims, supra. An absolute equality can never be achieved, for that would be, and is, defeated by every birth, every death, and every change of residence, whereby a voter comes into or moves out of the political unit's boundaries. It can only be an approximate equality, but it must honestly and conscientiously approach absolute equality, with a frequent reassessment of the fact; otherwise it becomes an "invidious" discrimination. (See discussion in Silver v. Jordan, supra.)

It is most difficult, if we assume it is not an impossibility, for judges in the lower courts of the federal judicial system to acquire the "omniscience" referred to by Mr. Justice Frankfurter in his dissenting opinion in Baker v. Carr, supra. It is not yet precisely known how far we must trudge toward the high peak of "one man, one vote" through the thickets and forests of invidious discrimination until that "timber line" is passed where discrimination becomes so minute it can be considered for all practical purposes non-existent. The line may well waver somewhat here or there, and at all times be difficult of ascertainment, depending upon the topography of the particular area where it is sought.

The lower federal courts, however, have been presented with some guide lines.

"In its series of decisions on June 15, 1964, the Supreme Court repeatedly tested equality of legislative apportionment by calculating the population ratio of the largest and the smallest districts in the state and by determining the minimum percentage of persons in the state represented by a majority of the legislature. A perfectly apportioned legislature would show a population ratio of 1:1 and a minimum percentage of 50.1%." W. M. C. A., Inc. v. Lomenzo, 238 F.Supp. 916, 927 (S.D. N.Y.1965).

In Maryland Committee v. Tawes, supra, the ratio in the allocation of seats between the most populous and least populous counties was 32 to 1 in the Senate and 12 to 1 in the House. In Davis v. Mann, supra, the Virginia State Senate was 2.65 to 1 and the House, 4.36 to 1. In Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964), the Delaware population variance was 15 to 1 in the Senate and 35 to 1 in the House. In Lucas v. Forty-Fourth General Assembly of State of Colo., supra, the population variance, approved and adopted by the people of Colorado in 1962, creating seats based on population *and other factors* in the state Senate, and on population alone in the House, was 3.6 to 1 and 1.7 to 1, respectively.

In W. M. C. A., Inc. v. Lomenzo, supra, the New York ratio was 2.4 to 1 in the Senate and 11.9 to 1 in the Assembly.

In Thigpen v. Meyers, 211 F.Supp. 826 (W.D.Wash., 1962) and 231 F.Supp. 938 (W.D.Wash., 1964), a panel from this circuit, sitting as a district court found a variance of 7.25 to 1 in the Washington Senate, and 4.65 to 1 in the Washington House of Representatives.

In Herweg v. Thirty Ninth Legislative Assembly, 246 F.Supp. 454 (D.Mont., 1965) the Montana legislature, before reapportionment, was weighted 80 to 1 in favor of a Petroleum County voter for a senator, compared to a voter of Yellowstone County; and 10 to 1 in the same counties with respect to members of the House of Montana Representatives.

In each of these cases, the Supreme Court or a three-judge district court held the standard of "Substantially Equal Population" had not been met; and held that each such apportionment failed to meet the requisites of the prescribed rule, and was, therefore, unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.

Nevada, with its larger number of rural counties, and its smaller number of heavily populated urban counties, faces the same unpleasant task as does its neighbor, California, of recognizing inequality in its apportionment. (See Silver v. Jordan, supra, and its discussion of Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), and Reynolds v. Sims, supra, 377 U.S. at 581, 84 S.Ct. 1362, 12 L.Ed.2d 506.)

### IX—*Other Considerations*

■■ The fact that certain political remedies are available, such as the initiative and referendum (Nev.Const. Art. XIX, Secs. 1 and 3), is constitutionally irrelevant. That the 1950 amendment to the Constitution was approved by the people of Nevada is irrelevant. Lucas v. Forty-Fourth General Assembly of State of Colo., supra, 377 U.S. at 736–737, 84 S.Ct. 1459, 12 L.Ed.2d 632.

■■ A diversity of peoples, resources, geographic sizes, types of business or agriculture, is, at least in large part, irrelevant. (Cf. Silver v. Jordan, supra, para. X.) And the analogy to the federal scheme of representation is not controlling. Sims v. Frink, 208 F.Supp. 431 (M.D.Ala.1962); Reynolds v. Sims, supra, 377 U.S. at 547–575, 84 S.Ct. 1362 (1964).

### X—*Conclusion*

Nevada's apportionment of both its Senate and Assembly, under Article IV,

Section 5 of its Constitution, and as implemented by § 218.050, Nev.Rev.Stat., is invidiously discriminatory, being based upon no constitutionally valid policy. We therefore find such apportionment to be invalid under the Equal Protection Clause of the Fourteenth Amendment to the United States. Constitution, as interpreted and determined by the Supreme Court of the United States, in that it substantially dilutes a voter's right to vote solely because of the county wherein he chooses to reside.

The problem regarding the validity of the provisions of Nevada's Constitution arises solely because of the adoption in 1950 of the Amendment to Article IV, Section 5, of the Constitution. The Nevada Constitution, as originally adopted in 1864, was in complete harmony with the present view of legislative apportionment as declared by the Supreme Court of the United States.

Specifically, we find and hold:

■■ 1. That the first paragraph of Article IV, Section 5, of the Constitution of the State of Nevada, wherein it is stated "and the number of senators shall not be less than one-third nor more than one-half of that of the members of the assembly," was and is unconstitutional only if, and to the extent, it prohibits the adoption of a valid system or plan of apportionment.[13]

■■ 2. That the first sentence of the second paragraph of Article IV, Section 5, of the Constitution of the State of Nevada, wherein it is stated: "The senate shall consist of one senator from each county," and the "proviso portion" of the second sentence of the second paragraph wherein it is stated: "provided, that each county shall be entitled to at least one assemblyman," are, and each is, unconstitutional, so long as the present or

---

13. Article IV, Section 5 (requiring the senate to be not less than one-third nor more than one-half of the members of the assembly) and Article XV, Section 5 (limiting the number of both branches of the legislature to seventy-five) were adopted under a system providing for apportionment of both houses of the legis-

lature on the basis of population, and are still operative; *unless*, under the present or a future distribution of population, they serve to prohibit reapportionment as required by the United States Constitution as interpreted by the Supreme Court of the United States, and by this opinion.

comparable inequalities of population exist among the various counties of Nevada.

■ 3. That Article XV, Section 6, of the Nevada Constitution (limiting the numbers of both branches of the legislature to seventy-five) is unconstitutional only if, and to the extent, it prohibits the creation of a valid and lawful plan of apportionment.[14]

■ 4. That Nevada Revised Statute 218.050(1) is unconstitutional only if, and to the extent, it prohibits a valid system or plan of apportionment which does not follow the number of senators and assemblymen prescribed within said 218.050(1).

■ 5. That Nevada Revised Statute 218.050(2) is unconstitutional in its entirety;

6. Because of a lack of evidence as to the makeup thereof, we do not presently pass upon the constitutionality of Nevada Revised Statute 218.060, relating to Clark County Assembly Districts, or 218.080, relating to Washoe County Assembly Districts.

### XI—*Remedy*

It is appropriate, we think, to repeat here what other three-judge district courts have said recently with respect to this same problem:

"Equitable principles must guide this court in whatever relief it determines is just and appropriate under the circumstances of this case. (Baker v. Carr, supra; Reynolds v. Sims, supra.)

This court asserts and agrees that 'legislative reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so.' Reynolds v. Sims, supra, 377 U.S. at 586,

84 S.Ct. at 1394." Silver v. Jordan, supra, at 585–586.

"In the legal climate of today, no citizen may acquire a right to a legal status created by an unremitting legislative disregard of sacred constitutional rights." Thigpen v. Meyers, 211 F.Supp. 826 (W.D.Wash., 1962).

Likewise, we must keep in mind recent pronouncements of our Supreme Court. In Scott v. Germano, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477, decided June 1, 1965, the federal district court had refused to stay its enforcement order after holding the Illinois Constitution (Art. IV, § 6, apportioning the Senate) invalid. The Illinois State Supreme Court had likewise held its own Constitution invalid as to the apportionment of the Senate, and looked to the Illinois legislature to act to remedy the malapportionment. (People ex rel. Engle v. Kerner, 32 Ill.2d 212, 205 N.E.2d 33 (1965).) The federal court's refusal to stay its own order under such circumstances was before the Supreme Court in Scott v. Germano, supra. The Supreme Court there said:

"We believe that the District Court should have stayed its hand. The power of a judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged. [citing cases]" 381 U.S. 407, 409, 85 S.Ct. 1525, 1527.

Thus, we think we must do that which is possible to encourage appropriate state action in this case, and to interfere with such state action as little as is possible. Yet, if Nevada's State officers and legislature, once ordered, fail to act, or to act with all due promptness and haste, we remind them that this court, ever conscious of its several oaths to uphold the Constitution of the United States, will unhesitatingly and promptly take appropriate action to correct the inequality found.

14. See note 13, supra.

**490**

■ Keeping uppermost in mind the necessity of the Nevada State Legislature to properly reapportion itself at the earliest possible moment, *it is the Order of this Court as follows:*

1. That the defendant, Grant Sawyer, Governor of the State of Nevada, call and convene by proclamation a special session of the Nevada Legislature, under Article IV, Section 2, of the Nevada Constitution, not later than October 30, 1965; and

2. That the said defendant, Grant Sawyer, Governor of the State of Nevada, pursuant to Article V, Section 9, of the Nevada Constitution, state to both houses, when organized, that the purpose for which they have been convened and have organized is to properly and constitutionally reapportion each respective house at the earliest possible moment, and that the legislature shall transact no legislative business except that for which they were especially convened; excepting the appropriation of funds necessary to defray the expenses of said special session; and

3. That the respective members of the Nevada Legislature appearing as parties defendants herein act at their earliest opportunity to reapportion both houses of the Nevada Legislature in a manner consistent with this opinion, and the decisions of the Supreme Court of the United States; and

4. That the Nevada State Legislature submit to this Court for approval not later than November 20, 1965, (and earlier, if possible) duly enacted and approved legislation creating a constitutionally valid reapportionment and redistricting plan, consistent with this opinion, opinions of the Supreme Court of the United States, and all Nevada constitutional provisions not rendered invalid by this opinion; [15] and

5. That this Court hereby retains jurisdiction of this action and cause, so

that in the event a valid reapportionment plan both for the Nevada Senate and Assembly is not timely adopted, it may make and enter such orders as it may deem appropriate; including a valid reapportionment plan for each house of the Nevada Legislature, or directing that each house be elected at large pending a valid reapportionment by the State Legislature itself; and,

6. That the facts found herein are deemed the Findings of Facts in the case, and that the law stated herein shall be deemed the Conclusions of Law herein.

---

15. Cf. Forty-fourth General Assembly of Colo. v. Lucas, 379 U.S. 693, 85 S.Ct. 715, 13 L.Ed.2d 699 (1965), and cautionary expression of Justice Harlan in his

concurring opinion in Jordan v. Silver, 381 U.S. 420, n. 11, 85 S.Ct. 1572, 14 L. Ed.2d 689 (1965).